Filed 10/9/15; pub. & mod. order 10/27/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of TERRI E. and GLENN RICHARD DRAKE.<br><br>TERRI E. DRAKE,<br><br>    Respondent,<br><br>      v.<br><br>GLENN RICHARD DRAKE,<br><br>    Appellant. | G050042<br><br>(Super. Ct. No. 07D000906)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Paula J. Coleman, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed in part, reversed in part, and remanded with directions.

Seastrom & Seastrom, Brian G. Seastrom and Ryan B. McIntire for Appellant.

Terri E. Drake, in pro. per., for Respondent.

\*        \*        \*

# INTRODUCTION

In this appeal, Glenn Richard Drake (Glenn)[1] challenges the trial court's order requiring him to pay adult child support of $1,404 per month for his emancipated son, Dallas Drake (Dallas). His appeal presents two issues. First, were the conditions of Family Code section 3910, subdivision (a) (section 3910(a)) for payment of adult child support met? Second, did the trial court err by ordering that adult child support payments be made to Terri E. Drake (Terri), who is Dallas's mother and Glenn's ex-wife, and to allow her to use those payments for her personal expenses?

Family Code section 3910 governs a parent's responsibility to support an adult child. Section 3910(a) provides: "The father and mother have an equal responsibility to maintain, to the extent of their ability, a child of whatever age who is incapacitated from earning a living and without sufficient means." Although the trial court misconstrued the standard for an award of adult child support, the court did not err by ordering Glenn to make support payments because the evidence established that Dallas was incapacitated from earning a living and without sufficient means. Dallas, who suffers from several psychiatric and learning disorders, lives in a residential treatment center in Texas and lacks the means to pay for expenses that are not publicly reimbursed.

The trial court erred, however, by ordering that Glenn make the adult child support payments to Terri. A parent's obligation to support an incapacitated adult child runs to the child, not the other parent. Dallas is a fully emancipated adult. He does not live with Terri, and she is not Dallas's conservator, guardian, or legal representative.

Adult child support is not the same as minor child support or spousal support, and payments must be made to Dallas, not to Terri. Nevertheless, we recognize the serious practical difficulties involved in structuring how to do so. Glenn states he is not opposed to making adult child support payments into Dallas's expense account at the

---

[1] As is customary, we use first names for clarity.

residential treatment center, but otherwise the parties offer no suggestions and we cannot decide in the first instance how support payments to Dallas should be made.

We therefore affirm the order awarding adult child support but reverse the order to the extent it requires support payments be made to Terri. On remand, the trial court must consider and decide the best means for paying adult child support to Dallas.

## FACTS AND PROCEDURAL HISTORY

### I. Background Facts

Glenn and Terri married in 1993 and separated in 2006. Their marriage was dissolved by judgment entered in August 2008. Glenn and Terri have two children by their marriage: Anthony, born in November 1991, and Dallas, born in February 1995.

The stipulated judgment of dissolution required Glenn to pay child support of $2,214 per month. Of that amount, $810 was allocated for Anthony and $1,404 was allocated for Dallas. The stipulated judgment provided that Glenn must pay child support "until further order of the court or until the child marries, dies, is emancipated, reaches nineteen (19), or reaches eighteen (18) and is no longer a full-time high school student, whichever occurs first." In September 2009, Glenn and Terri entered into a stipulation (filed in October 2009) maintaining the same child support obligations.

Dallas emancipated in February 2014, when he turned 19 years of age. He has been diagnosed with attention deficit hyperactivity disorder, psychotic disorder (not otherwise specified), oppositional defiant disorder, and cannabis abuse. As of the time of the adult child support order, he lived at a residential treatment center in Texas, where he receives treatment for those conditions through an individualized education program (IEP).[2] At that time, Dallas had not lived with Terri (who had primary physical custody of Dallas during his minority) for five years.

---

[2] An IEP is an education plan designed to meet a disabled child's unique needs. An IEP is designed by the school district, in consultation with the child's parents, after the

3

The Capistrano Unified School District (CUSD) pays for Dallas's tuition, room, board, and IEP assessments at the residential treatment center pursuant to the Individuals with Disabilities Education Act, 20 United States Code section 1400 et seq. Based on the IEP conducted in October 2013, the CUSD will continue to provide services and pay for Dallas's tuition, room, board, and IEP assessments at the residential treatment center up to the time when Dallas becomes 22 years of age or graduates from high school. In addition, the residential treatment center pays for a portion of Terri's travel expenses when she visits Dallas.

Dallas has expenses that are not paid for by the CUSD. They include certain medical expenses, clothing, toiletries, recreation, and snacks. Glenn claimed that in the three years before February 2014, he paid about $2,500 in expenses for Dallas. Terri claimed that in 2013 alone, she paid nearly $10,970 in expenses for Dallas.

## II. Motion for Adult Child Support

In November 2013, the Orange County Department of Child Support Services (DCSS) filed a motion to extend child support payments for Dallas for an indeterminate period of time beyond his emancipation. In effect, this was a motion for adult child support in the amount of $1,404 per month. The DCSS alleged Dallas was incapacitated from earning a living and without sufficient means due to his mental health disorders and other medical concerns. Terri signed an income and expense declaration in which she stated her expenses for Dallas, including her travel expenses to visit him, were $1,750 per month. Terri stated on the form, "[t]he time involved needs to be taken into consideration,—[m]y average hours spent [on Dallas's care] is 20 hours per week."

In a declaration in opposition to the motion, Glenn stated that any of Dallas's expenses that was not paid for by the CUSD was billed directly to, and paid for by, him. Glenn asserted: "As Dallas'[s] financial needs are being fully met by the CUSD

child is evaluated as eligible for special education services. (20 U.S.C. §§ 1412(a)(4), 1414(d).)

4

and myself, I believe that any child support funds paid to [Terri] are simply funding her own lifestyle. . . . [¶] . . . I believe that any support paid *to* [Terri] would be support *for* [Terri]. I should not be made to enrich [Terri]'s lifestyle under the guise of child support, especially when Dallas does not reside with [Terri], and has not for five (5) years."

A hearing on the motion for adult child support was held on February 27, 2014. No testimony was taken, but both Glenn and Terri spoke to the court about their expectations and Dallas's needs. Glenn expressed optimism that Dallas would receive his high school diploma and pledged to take care of him after his departure from the residential treatment facility. Glenn did not object to providing Dallas financial support but asserted it should not be provided directly to Terri.

Terri explained she spends a great deal of time taking care of Dallas and speaks with him sometimes three or four times each day. She participates in therapy calls and IEP meetings, works with the CUSD "on a daily basis," and works with the "team of professionals" at the residential treatment center. At the time of the hearing, Terri was not employed.

Counsel for the DCSS summed up what was and what was not in dispute: "There really is no dispute between the parties that Dallas is incapacitated from earning a living. He has been in a residential treatment facility for at least five years. He has not been in [Terri]'s care for at least five years. That's relevant because the current child support order was entered while he was in a residential facility. It was stipulated to in 2009. [¶] . . . [T]here's no doubt that Dallas is going to be incapacitated from earning a living at least through December [2014] and more than likely [until he is] 22. There is no real belief, even by the parties or in the IEP, that even if they graduate him out in December of 2014 that he is going to then be able to go live on his own and to obtain a job." There also was no dispute that Glenn earned about $189,000 per year and had the ability to support Dallas, while Terri's only income was monthly spousal support of $420.13.

5

### III.  The Trial Court's Order

The trial court issued a five-page order granting the motion for adult child support.  The court concluded that Dallas was incapacitated from earning a living and without sufficient means under section 3910(a).  The court found that "[t]he fact that the [CUSD] is paying for Dallas'[s] expenses does not negate a parent's obligation to support him nor does it make Dallas a public charge."  The court rejected Glenn's argument that adult child support paid to Terri would enrich her and support her lifestyle, by stating: "The court asks why support should not continue, have his needs and circumstances changed?  If [Glenn] felt that child support was not needed for the benefit of Dallas[] why was there no attempt to modify or cease it in the last five years?  [Glenn] has been paying his support obligation under the same circumstances for years."

The trial court found that child support paid to Terri was necessary to allow her to participate in Dallas's treatment:  "The court believes that but for the receipt of child support and spousal support, [Terri] would not be able to be as involved with Dallas'[s] progress and provide incidentals for him which the court believes to be in Dallas'[s] best interests."  The court concluded by finding, "it is in the best interests of Dallas that adult child support should continue in order to maintain the status quo to see if Dallas graduates from high school in December 2014."  The trial court ordered adult child support in the amount of $1,404, which was the amount Glenn and Terri had previously agreed upon as the amount of child support while Dallas was a minor.

### STANDARD OF REVIEW

The trial court's determination to grant or deny adult child support or to modify a support order is reviewed under the abuse of discretion standard.  (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1150-1151 (*Drake*).)  "'The abuse of discretion standard . . . measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria.'"

6

(*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089.) The scope of the trial court's discretion is limited by law governing the subject of the action taken. (*Ibid.*) An action that transgresses the bounds of the applicable legal principles is deemed an abuse of discretion. (*Ibid.*) In applying the abuse of discretion standard, we determine whether the trial court's factual findings are supported by substantial evidence and independently review its legal conclusions. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230.)

## DISCUSSION

### I. The Trial Court Did Not Err by Ordering Glenn to Pay Adult Child Support.

Under section 3910(a), a parent's responsibility to support an adult child arises when two conditions are met: (1) the adult child is "incapacitated from earning a living" and (2) the adult child is "without sufficient means." The amount of support for an adult child is determined by the statutory guidelines for minor children set forth at Family Code section 4050 et seq. (*Drake*, *supra*, 53 Cal.App.4th at pp. 1154-1156.)

The term "incapacitated from earning a living" (§ 3910(a)) means "an inability to be self-supporting because of a mental or physical disability or proof of inability to find work because of factors beyond the child's control." (*Jones v. Jones* (1986) 179 Cal.App.3d 1011, 1014-1015.) Glenn does not dispute that Dallas is incapacitated from earning a living within the meaning of section 3910(a).

The statutory purpose for adult child support is """"to protect the public from the burden of supporting a person who has a parent . . . able to support him or her." [Citations.]'" (*Drake*, *supra*, 53 Cal.App.4th at p. 1154.) Therefore, "the question of 'sufficient means' should be resolved in terms of the likelihood a child will become a public charge." (*Ibid.*)

We agree with Glenn that the trial court misconstrued section 3910(a) in ordering adult child support. The trial court mistakenly considered the need to support

7

Terri and used the best interests of the child standard. Dallas is an adult, not a minor. Section 3910(a), which governs adult child support, does not consider a parent's needs or incorporate the best interests of the child standard. Under section 3910(a), the court considers only two factors. One—is the adult child incapacitated from earning a living, which is not disputed here. Two—does the adult child have sufficient means, which is disputed here.

On the second point, Glenn argues Dallas has sufficient means because the CUSD pays for Dallas's tuition, room, board, and IEP assessments.[3] But Dallas has a number of other necessary expenses which the CUSD does not cover. Such expenses were evidenced by receipts presented to the trial court by both Glenn and Terri and included medical expenses (including deductibles and copays), clothing, books, toiletries, and snacks. Dallas does not have sufficient means to cover those expenses, which are at least $800 per month, placing him at risk of becoming a public charge if adult child support is not ordered.

Dallas is, therefore, both incapacitated from earning a living and without sufficient means under section 3910(a). The trial court did not err by ordering Glenn to pay adult child support.

## II. The Trial Court Erred by Ordering That Adult Child Support Payments Be Made to Terri.

Glenn does not challenge the amount of adult child support he was ordered to pay. He argues adult child support payments for Dallas should not be made to Terri, who has used those payments for her personal expenses. We agree.

---

[3] The CUSD's payment for Dallas's tuition, room, board, and IEP assessments at the residential treatment facility could affect the amount of adult child support. Once the amount of adult child support is calculated under Family Code section 4050, the trial court has discretion to reduce the amount based on the child's independent income or assets. (*Drake*, *supra*, 53 Cal.App.4th at pp. 1155-1156.)

A parent's duty to support an incapacitated adult child runs to the child. (*Drake*, *supra*, 53 Cal.App.4th at p. 1152.) When the adult child is disabled and lives with a parent who bears the primary financial responsibility for the child's care, payment of adult child support to the parent makes sense. But Dallas does not live with Terri, and she does not pay for his basic living expenses. Dallas lives, and for the foreseeable future will live, in a residential treatment facility, and his tuition, room, and board are paid for by the CUSD. Terri is not Dallas's conservator, guardian, or legal representative. Terri and Glenn are equally responsible, to the extent each is able, to maintain Dallas. (§ 3910(a).) Glenn has no more obligation to make adult child support payments to Terri than he has to make those payments to himself and use them to pay Dallas's expenses.

The trial court found that paying Dallas's adult child support directly to Terri, who had not worked regularly for years, would provide her the financial means necessary to enable her to be involved in care and therapy for Dallas and to provide him with incidentals. Adult child support is neither minor child support nor spousal support. The amount of Terri's spousal support is a different matter from that of adult child support for Dallas. Adult child support cannot be indirectly awarded under the guise of spousal support (*In re Marriage of Serna* (2000) 85 Cal.App.4th 482, 484; *In re Marriage of McElwee* (1988) 197 Cal.App.3d 902, 910-911); likewise, spousal support cannot be indirectly awarded under the guise of adult child support. Terri can make the necessary application if she believes higher spousal support is warranted.[4]

Dallas does not have a conservator, guardian, or legal representative. Perhaps he should. In the meantime, consideration must be given as to how adult child support payments shall be made directly to Dallas. Possibilities include making

---

[4] We note that certain of Terri's personal expenses are properly characterized as Dallas's necessary expenses. For instance, Terri's reasonable travel expenses to visit Dallas, to the extent not reimbursed by the residential treatment center, may be appropriately paid out of Dallas's adult child support.

payments into Dallas's account at the residential treatment center, opening a trust account for Dallas, or opening a checking account in Dallas's name with Glenn and/or Terri as required signators. On remand, the trial court must consider those and any other reasonable possibilities that result in payment of adult child support directly to Dallas or his legal representative for payment of his expenses.

## DISPOSITION

We reverse the order granting the motion for adult child support with respect to the recipient of support payments. In all other respects, the order granting the motion for adult child support is affirmed. The matter is remanded with directions for the trial court to make an order that support payments be made to Dallas or his legal representative in any manner consistent with this opinion. Because each party prevailed in part, the parties shall bear their own costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

10

Filed 10/27/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| In re the Marriage of TERRI E. and GLENN RICHARD DRAKE. | |
| TERRI E. DRAKE, Respondent, v. GLENN RICHARD DRAKE, Appellant. | G050042 (Super. Ct. No. 07D000906) ORDER MODIFYING OPINION AND GRANTING REQUEST FOR PUBLICATION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on October 9, 2015, be modified as follows:

The fourth full paragraph beginning with "We agree with Glenn" on page 7 and continuing onto page 8 is deleted and replaced with the following new paragraph:

We agree with Glenn that the trial court misconstrued section 3910(a) in ordering adult child support. The trial court mistakenly considered the need to support Terri and relied solely on the best interests of the child standard. Dallas is an adult, not a minor. Under section 3910(a), which governs adult child support, the court considers two factors. One—is the adult child incapacitated from

earning a living, which is not disputed here.  Two—does the adult child have sufficient means, which is disputed here.

This modification does not effect a change in the judgment.

The Association of Certified Family Law Specialists has requested that our opinion, filed October 9, 2015, be certified for publication.  It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2) and(3).  The request is GRANTED.  The opinion is ordered published in the Official Reports.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.