Filed 3/28/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| KIMBERLY KIRCHMEYER, as Executive Director, etc., <br><br>     Plaintiff and Appellant, <br><br>       v. <br><br> GEOFFREY PHILLIPS, <br><br>     Defendant and Respondent. | G051594 <br><br> (Super. Ct. No. 30-2014-00735437) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Affirmed.

Kamala D. Harris, Attorney General, Gloria Castro, Assistant Attorney General, and Edgar Allan Jones III, Deputy Attorney General, for Plaintiff and Appellant.

Doyle Schafer McMahon and Raymond J. McMahon for Defendant and Respondent.

\*        \*        \*

# INTRODUCTION

Kimberly Kirchmeyer (the Director), as Executive Director of the Medical Board of California (the Medical Board), launched an investigation of Geoffrey Phillips, M.D., a licensed psychiatrist, based on a complaint that Phillips had carried on a sexual relationship with a patient. As part of the investigation, an investigatory subpoena duces tecum for the production of specified medical records of the patient was served on Phillips. After both he and the patient objected to the subpoena duces tecum, and he failed to produce the medical records, the Director brought a petition in the trial court to compel their production. The trial court denied the petition and dismissed it. The Director appeals from the judgment dismissing the petition.

We conclude the trial court did not err and therefore affirm. The medical records sought by the investigatory subpoena duces tecum were protected by the psychotherapist-patient privilege of Evidence Code section 1014. Because the psychotherapist-patient privilege is grounded in the patient's constitutional right of privacy, the Director had to show a compelling interest justifying production of the medical records sought. The Director failed to show a compelling interest and has not establishedthat an exception to the psychotherapist-patient privilege applied to the medial records sought by the investigatory subpoena duces tecum.

# FACTS AND PROCEDURAL HISTORY

## I.

### The Medical Board Investigates Phillips.

In 2003, the Medical Boardissued Phillips a physician's and surgeon's certificate authorizing him to practice medicine in the State of California. A.M. received therapy from Phillips at his office from September 11, 2009 through April 13, 2010. In October 2009, A.M. was admitted to St. Joseph Hospital for reasons pertaining to psychiatric issues. Phillips treated A.M. while she was at the hospital.

2

In June 2011, A.M. filed for divorce from her husband, S.M. In March 2012, the Medical Board received a complaint from S.M., who alleged that Phillips had engaged in a sexual relationship with A.M. while she was his patient. S.M. also alleged "overprescribing, unprofessional conduct, and substandard care."

Based on S.M.'s complaint, the Medical Board initiated an investigation of Phillips and assigned the investigation to Clinton Dicely, an investigator for the Medical Board at its field office in Tustin. Dicely interviewed S.M., who described the circumstances which had indicated to him that A.M. had had an affair with Phillips. Between April 2012 and April 2013, Dicely attempted to contact A.M. and obtain from her an authorization for release of psychiatric information. In July 2012, A.M. sent Dicely an e-mail stating she had moved to Brazil and "Phillips had helped her get out of a controlling, abusive relationship with her husband."

In April 2013, Dicely was able to interview A.M. She confirmed she had been a patient of Phillips but claimed she had not seen him as a patient for a couple of years. Although A.M.admitted having seen Phillips outside of therapeutic office visits, she said she had done so because she had known him as a friend before starting therapy. She denied having had a sexual relationship with Phillips and denied he had ever engaged in inappropriate conduct as her therapist. A.M. refused to sign a release authorizing the Medical Board to obtain her treatment records from Phillips.

Dicely prepared an investigatory subpoena duces tecum for the production of A.M.'s treatment records and served that subpoena duces tecum on Phillips's attorney in February 2014. Dicely also mailed a notice to A.M., advising her of her right to object to the subpoena duces tecum. The subpoena duces tecum sought production of A.M.'s complete medical records, including "all medical histories, treatment notes and records,""all correspondence, doctor-patient agreements, memorandums, releases, telephone messages," and "all other data, information or record which would reveal all

3

medical care provided to the patient."Phillips objected to the subpoena duces tecum and did not appear to produce documents on the date and at the place set for production.

## II.

### The Medical Board's Petition to Compel Compliance with the Subpoena Duces Tecum

The Director filed a petition to compel Phillips to comply with the subpoena duces tecum (the Petition). In support of the Petition, the Director submitted a declaration each from Fatemeh Abootorab, M.D. (the District Medical Consultant), Dicely, and S.M. Phillips filed opposition to the Petition and asserted, among other things, the psychotherapist-patient privilege and the patient's constitutional right of privacy. A.M. also filed an objection to the Petition and asserted the psychotherapist-patient privilege and the patient's constitutional right of privacy.

Following a hearing on the Petition, the trialcourt issued an order for Phillips to produce a privilege log briefly describing each document and the ground on which disclosure was being withheld. In a lengthy statement of reasons, the court found that at some point in time, the professional relationship between Phillips and A.M. had become personal. The court noted: "[N]either A[.M.] nor Dr. Phillips denied having feelings for one another or spending the weekend together in Palm Springs. It does reasonably appear that some non-therapeutic relationship did indeed develop between these two."

The court concluded: "[B]oth the State Constitutional right to privacy and the statutory privilege for psychotherapist communications provide A[.M.] grounds for resisting the Medical Board subpoena—at least in part. Given the nature of the investigation, there is no basis for compelling production of radiographs, lab reports or billing records . . . as these cannot reasonably show the existence of an inappropriate sexual relationship between the two. As for the remaining categories (medical notes,

4

correspondence, and other data . . .), some of the information might be subject to disclosure, some of it might not; however, it is impossible to note at this juncture since there is no privilege log or other breakdown of materials in Dr. Phillips' custody."

Phillips produced a privilege log and lodged under seal the documents identified. On the privilege log, Phillips identified 21 documents, all of which were progress notes he had prepared regarding A.M., starting on September 11, 2009 and ending on April 13, 2010.

The trial court conducted, without objection, an in camera review of the documents lodged under seal.[1] The court concluded A.M.'s privacy interest in the documents outweighed the Director's interest in their production and denied the Petition. A judgment was entered ordering that the Petition "is dismissed." The Director timely appealed from the judgment.


## DISCUSSION

## I.

### Background Law: The Medical Practice Act and the Medical Board's Authority to Issue Investigative Subpoenas

The Medical Practice Act, Business and Professions Code section 2000 et seq., authorizes the Medical Board to issue licenses to physicians and surgeons, to review the quality of medical practice carried out by physicians and surgeons, and to enforce the disciplinary provisions of the Medical Practice Act. (Bus. & Prof. Code, § 2004.) The Medical Board has authority to investigate complaints of unprofessional conduct by physicians and surgeons. (*Id.*, § 2220.)

"A primary power exercised by the [Medical] Board in carrying out its enforcement responsibilities is the power to *investigate*: the statute broadly vests the

---

[1] Whether the trial court could review in camera the documents listed on the privilege log is not before us. As noted, there was no objection to such procedure.

[Medical] Board with the power of 'Investigating complaints from the public, from other licensees, from health care facilities, or from a division of the board that a physician and surgeon may be guilty of unprofessional conduct.' [Citation.] The [Medical] Board delegates its authority to conduct such an investigation to its executive director and its staff of professional investigators. [Citation.] The [Medical] Board's investigators have the status of peace officers [citation], and possess a wide range of investigative powers." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 7-8.)

The Medical Board has authority to issue investigatory subpoenas to obtain patient and physician records as part of an investigation of physician conduct. (Gov. Code, § 11181, subd. (e); Bus. & Prof. Code, §§ 108, 2220, 2234.) Government Code sections 11187 and 11188 set forth the remedies for failure to comply with an investigatory subpoena. Section 11187, subdivision (a) authorizes the head of the department (here, the Director) to petition the trial court for an order compelling the person subject to the subpoena to attend and testify or produce documents. Section 11188 provides that upon the filing of the petition, the trial court "shall enter an order directing the [subpoenaed] person to appear before the court at a specified time and place and then and there show cause why he or she has not attended, testified, answered interrogatories, or produced or permitted the inspection or copying of the papers or other items described in subdivision (e) of Section 11181 as required." If the subpoena was "regularly issued," then the trial court "shall enter an order" that the subpoenaed person appear and testify or produce the documents. (*Ibid.*)

Engaging in sexual relations with a patient constitutes unprofessional conduct and is ground for disciplinary action against a physician. (Bus. & Prof. Code, § 726.) In addition, "[s]exual exploitation" of a patient by a physician and surgeon, psychotherapist, or alcohol and drug abuse counselor is a criminal offense. (*Id.*, § 729, subd. (b).) Sexual exploitation includes (1) an act of sexual intercourse, sodomy, oral copulation, or sexual contact with a patient or client; and (2) such acts with a former

6

patient or client when the relationship was terminated primarily for the purpose of engaging in those acts unless the physician and surgeon, psychotherapist, or alcohol and drug abuse counselor "has referred the patient or client to an independent and objective physician and surgeon, psychotherapist, or alcohol and drug abuse counselor recommended by a third-party physician and surgeon, psychotherapist, or alcohol and drug abuse counselor for treatment." (*Id.*, § 729, subd. (a).) The patient's or client's consent is not a defense to a charge of sexual exploitation. (*Id.*, § 729, subd. (b).)

## II.

**The Trial Court Did Not Err by Denying the Petition Because the Medical Records Are Protected by the Psychotherapist-patient Privilege.**

A. *Good Cause Requirement/Psychotherapist-patient Privilege*

The Medical Board initiated an investigation of Phillips under the Medical Practice Act, issued a subpoena under Government Code section 11181,subdivision (e),and brought the Petition under Government Code section 11187 to compel compliance with the subpoena.

As a Court of Appeal has explained: "When the Medical Board seeks judicial enforcement of a subpoena for a physician's medical records, it cannot delve into an area of reasonably expected privacy simply because it wants assurance the law is not violated or a doctor is not negligent in treatment of his or her patient. [Citation.] Instead, the Medical Board must demonstrate through competent evidence that the particular records it seeks are relevant and material to its inquiry sufficient for a trial court to independently make a finding of good cause to order the materials disclosed. [Citations.] This requirement is founded in the patient's right of privacy guaranteed by article I of the California Constitution, which the physician may, and in some cases must,

7

assert on behalf of the patient." (*Bearman v. Superior Court* (2004) 117 Cal.App.4th 463, 468-469.)

The standard of review for discovery orders in general is abuse of discretion. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.) The determination whether a privilege applies likewise is subject to the abuse of discretion standard. (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089; *Fireman's Fund Ins. Co. v. Superior Court* (2011) 196 Cal.App.4th 1263, 1272-1273.)

As part of the abuse of discretion standard, we determine whether the trial court's factual findings are supported by substantial evidence. (*In re Marriage of Drake* (2015) 241 Cal.App.4th 934, 940.) The trial court's determination whether the Medical Board established good cause is reviewed for substantial evidence. (*Fett v. Medical Bd. of California* (2016) 245 Cal.App.4th 211, 216 (*Fett*).) The appellate court determines whether the evidence "was sufficient to support a finding of good cause for invading the patients' privacy rights." (*Ibid.*)

In this case, the trial court found, in effect, the Director had not established good cause because A.M.'s privacy interest in the documents outweighed the Director's interest in their production. The privacy interest asserted here was the psychotherapist-patient privilege. Under the psychotherapist-patient privilege, a patient has the "privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication" between the patient and his or her psychotherapist. (Evid. Code, § 1014.) Both the patient and the psychotherapist may claim the privilege. (*Id.*, § 1014, subds. (a), (b), & (c).) There is no dispute the 21 progress notes sought by the Director constitute confidential communications between a psychotherapist and a patient.

The psychotherapist-patient privilege is based on the constitutional right of privacy and therefore is accorded constitutional protection. "The psychotherapist-patient privilege has been recognized as an aspect of the patient's constitutional right to privacy." (*People v. Stritzinger* (1983) 34 Cal.3d 505, 511 (*Stritzinger*).) In the case of *In re*

8

*Lifschutz* (1970) 2 Cal.3d 415, 431-432, the California Supreme Court stated: "We believe that a patient's interest in keeping such confidential revelations from public purview, in retaining this substantial privacy, has deeper roots than the California statute and draws sustenance from our constitutional heritage. In *Griswold* [*v.*] *Connecticut* [(1965)] 381 U.S. 479, 484 . . . , the United States Supreme Court declared that 'Various guarantees [of the Bill of Rights] create zones of privacy,' and we believe that the confidentiality of the psychotherapeutic session falls within one such zone."(Last brackets in original.) The psychotherapist-patient privilege also invokes the right of privacy guaranteed by article I, section 1 of the California Constitution. (*People v. Hammon* (1997) 15 Cal.4th 1117, 1127.)

The showing required to overcome a privacy right depends on the nature of the privacy right asserted. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 34-35.) In some cases, a compelling interest must be shown, while a simple balancing test is used in other situations. (*Id.* at p. 34.) "The particular context, i.e., the specific kind of privacy interest involved and the nature and seriousness of the invasion and any countervailing interests, remains the critical factor in the analysis." (*Ibid.*)

In *Fett*, *supra*, 245 Cal.App.4th at page 213, the Court of Appeal affirmed the trial court's order compelling a physician to comply with an administrative investigative subpoena issued by the Medical Board seeking certified patient records. The Court of Appeal used a balancing test to determine that sufficient evidence supported the trial court's determination of good cause, and such good cause outweighed the patients' competing privacy interests. (*Id.* at pp. 221-222,224-225.)

Although the *Fett* court used a simple balancing test, we use the compelling state interest analysis because we are dealing with records protected by the psychotherapist-patient privilege, whichwas not asserted in *Fett*.The psychotherapist-patient privilege is a kind of privacy interest that may be overcome only on a showing of a compelling state interest. (*Stritzinger*, *supra*, 34 Cal.3d at p. 511

9

[psychotherapist-patient privilege "may yield in the furtherance of compellingstate interests"]; see *Hill v. National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th at pp. 34-35, fn. 11 [listing cases addressing right of privacy and citing *Stritzinger* as requiring a compelling state interest to overcome psychotherapist-patient privilege].) "'The constitutional right is by no means absolute. The state's interest in facilitating the ascertainment of truth in connection with legal proceedings is substantial enough to compel disclosure of a great variety of confidential material, including even communications between a psychotherapist and his patient.'" (*Stritzinger*, *supra*, at p. 511.)[2]

At oral argument, the deputy attorney general argued, for the first time, that under Business and Professions Code section 2225, subdivision (a), the subpoenaed documents were not privileged at all because they were sought in a disciplinary investigation.[3] The Director did not make this argument in the trial court, in the

---

[2]The California Supreme Court has questioned whether the federal constitutional basis for the psychotherapist-patient privilege remains valid: "Although over 40 years have elapsed since our decision in [*In re*] *Lifschutz*[, *supra*, 2 Cal.3d 415], the United States Supreme Court itself has not yet definitively determined whether the federal Constitution embodies even a *general* right of informational privacy."(*People v. Gonzales* (2013) 56 Cal.4th 353, 384.) The court in *People v. Gonzales* assumed, without deciding, that such a right exists. (*Id.*at p. 385.) *In re Lifschutz* and *Stritzinger* have not been overruled, and we remain bound by them. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) In any case, the psychotherapist-patient privilege is also based on the right of privacy guaranteed by the California Constitution. (*People v. Hammon*, *supra*, 15 Cal.4th at p. 1127.)

[3] The relevant part of Business and Professions Code section 2225, subdivision (a) reads: "Notwithstanding Section 2263 and any other law making a communication between a physician and surgeon or a doctor of podiatric medicine and his or her patients a privileged communication, those provisions shall not apply to investigations or proceedings conducted under this chapter. Members of the board, the Senior Assistant Attorney General of the Health Quality Enforcement Section, . . . and representatives of the board . . . shall keep in confidence during the course of investigations, the names of any patients whose records are reviewed and shall not disclose or reveal those names, except as is necessary during the course of an investigation, unless and until proceedings are instituted.The authority of the board or the California Board of Podiatric Medicine

10

appellant's opening brief, or in the appellant's reply brief. The argument is therefore forfeited. (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427-428.)

B. *The Director Did Not Show a Compelling Interest for Disclosure.*

In applying the compelling state interest analysis, we firstconsider the Director's interest in disclosure of the privileged documents. In that regard, the Director asserts: "[T]he State has a compelling interest in protecting the public from incompetent, impaired, or negligent physicians. Physicians hold important positions of trust, and violations of the standard of care can have significant—even fatal—consequences. Because patients often lack the knowledge or expertise necessary to detect when their physicians are delivering inappropriate or dangerous medical care, the [Medical] Board is vested with the responsibility and authority to investigate physicians whose care may pose risks to patients' health and safety. Sexual misconduct with patients is against the law. The [Medical] Board does not need the compliance and cooperation of patients before it can hold physicians to that statutory standard." (Fns. omitted.)

---

and the Health Quality Enforcement Section to examine records of patients in the office of a physician and surgeon or a doctor of podiatric medicine is limited to records of *patients who have complained to the board* or the California Board of Podiatric Medicine about that licensee. (Italics added.)

   Subdivision (b)(1) of Business and Professions Code section 2225 reads: "Notwithstanding any other law, the Attorney General and his or her investigative agents, and investigators and representatives of the board or the California Board of Podiatric Medicine, may inquire into any alleged violation of the Medical Practice Act or any other federal or state law, regulation, or rule relevant to the practice of medicine or podiatric medicine, whichever is applicable, and may inspect documents relevant to those investigations in accordance with the following procedures: [¶] (1) Any document relevant to an investigation may be inspected, and copies may be obtained, *where patient consent is given*." (Italics added.)

We note in this case the patient, A.M., did not complain to the Medical Board and did not give consent to inspection of her medical records.

The interests identified by the Director are valid and significant. The Medical Board is charged with the authority to investigate and commence disciplinary actions and to take disciplinary action against a physician's license based on unprofessional conduct as defined in the Medical Practice Act. (*Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 768.) If proven, the charge that Phillips engaged in sexual relations with A.M. while she was his patient would constitute unprofessional conduct and could lead to disciplinary action or criminal penalties against him. (Bus. & Prof. Code, §§ 726, 729.) Administrative proceedings to revoke, suspend, or impose discipline on a professional license are intended to protect the public. (*Griffiths v. Superior Court*, *supra*, at p. 768; see *In re Stier* (2007) 152 Cal.App.4th 63, 79 ["public safety is a paramount concern in a Medical Board proceeding"].)

But that being said, and in light of the Medical Board's forfeiture of a Business and Professions Code section 2225, subdivision (a) argument, we must also consider whether the Medical Board has a compelling interest in the particular documents sought, i.e., the progress notes identified in the privilege log. The trial court found the relationship between Phillips and A.M. "[a]t some point"became personal and cited evidence supporting that finding. Although A.M. denied having had a sexual relationship with Phillips, there is evidence in the record to support a contrary finding, including a declaration from Dicely and a declaration from S.M. But this evidence only serves to emphasize that the Medical Board had no compelling need for the progress notes identified in the privilege log or that the subpoena was overbroad. (See *Bearman v. Superior Court*, *supra*, 117 Cal.App.4th at p. 472 [the Medical Board's subpoena must be carefully drafted to avoid securing improper documents].) Whether or not Phillips and A.M. had a sexual relationship can be shown by evidence not subject to the psychotherapist-patient privilege, and, as A.M. argued, it is unlikely any such relationship would have been documented in the patient notes. A.M. did not complain about the treatment she received from Phillips, and the Medical Board's investigation is not based

12

on allegations, such as misdiagnosis or mistreatment, which might be reflected in progress notes and other medical records.

Indeed, the trial court reviewed the 21 progress notes in camera and concluded A.M.'s privacy interest outweighed the Director's interest in disclosure. We have no reason to second-guess the trial court's conclusion.

The Director acknowledges the trial court did review the progress notes, but argues the "court'svision was too narrow." According to the Director, the trial court should have considered the absence of an entry in the notes of (1) any attempt by Phillips to address A.M.'s feelings for him or(2) his referring A.M. to an independent and objective physician for treatment.

The Director is assuming, however, that the progress notes lacked such entries. The trial court was careful not to reveal the contents of the progress notes, and its conclusion thatA.M.'s privacy interest outweighed the Director's interest in disclosure does not reflect whether the notes supported the Director or Phillips.The Medical Board's investigation is based on allegations under Business and Professions Code section 726, and, if charges under Business and Professions Code section 729, subdivision (a) are brought against Phillips, it would be incumbent upon him to produce evidence he properly counseled A.M.

C. *Compelling Interest Based on "Transference"*

The Director argues she had a compelling interest in disclosure of the progress notes because they were potentially relevant to the issue of "transference"of feelings. One court explained transference as follow: "This phenomenon is '[t]he process whereby the patient displaces on to the therapist feelings, attitudes and attributes which properly belong to a significant attachment figure of the past, usually a parent, and responds to the therapist accordingly.' S. Waldron-Skinner, *A Dictionary of Psychotherapy* 364 (1986). Transference is common in psychotherapy. The patient,

required to reveal her innermost feelings and thoughts to the therapist, develops an intense, intimate relationship with her therapist and often 'falls in love' with him. The therapist must reject the patient's erotic overtures and explain to the patient the true origin of her feelings. A further phenomenon that may occur is countertransference, when the therapist transfers his own problems to the patient. When a therapist finds that he is becoming personally involved with the patient, he must discontinue treatment and refer the patient to another therapist." (*St. Paul Fire & Marine Ins. Co. v. Love* (Minn. 1990) 459 N.W.2d 698, 700.)

As Phillips argues, the Director did not present the issue of transference to the trial court. Neither the Petition nor the memorandum of points and authorities in support mentioned transference. Dr. Abootorab stated in her declaration the medical records "could establish the basis for and the nature of boundary violations, and hence unprofessional conduct," and the Director asserts the term "boundary violations" includes transference. The trial court should not be expected, however, to understand and apply complicated psychoanalytic terminology and procedures without guidance and argument from the litigants. If the Director wanted the trial court to review the progress notes with an eye for the process of transference, she had to tell the trial court what transference meant.

D. *Evidence Code Section 1020*

The Director argues the exception to the psychotherapist-patient privilege of Evidence Code section 1020 applies to the records sought by the investigatory subpoena duces tecum. Evidence Code section 1020 states: "There is no privilege under this article as to a communication relevant to an issue of breach, by the psychotherapist or by the patient, of a duty arising out of the psychotherapist-patient relationship." The exception created by section 1020 has been held, correctly we believe, to be an expression of the "in-issue" doctrine. (*Eisendrath v. Superior Court* (2003) 109

14

Cal.App.4th 351, 363.) The in-issue doctrine creates an implied waiver when the holder of the privilege tenders an issue involving the substance or content of a protected communication. (*Ibid.*; see *Rockwell Internat. Corp. v. Superior Court* (1994) 26 Cal.App.4th 1255, 1268.)

Neither Phillips nor A.M. tendered the substance or content of the records sought by the investigatory subpoena duces tecum. A.M. has not complained of her treatment by Phillips and has expressly asserted the psychotherapist-patient privilege.

### DISPOSITION

The judgment is affirmed. Respondent shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

15