Filed 12/19/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SCOTT JOHNSON, | H053076 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. 24CV439119) |
| v. | |
| RUBYLIN, INC., | |
| Defendant and Respondent. | |

The Construction-Related Accessibility Standards Compliance Act (Act), Civil Code[1] sections 55.51–55.545, entitles certain defendants in construction-related accessibility suits to a stay and an "early evaluation conference" (hereafter, "early evaluation conference" or "conference"). (§ 55.54, subd. (b)(1).)  If a qualified defendant so requests, the trial court must grant a 90-day stay of the proceedings (*id.*, subd. (d)(1)), schedule a conference (*id.*, subd. (d)(2)), and direct the plaintiff to file with the court and serve on the defendant a statement that includes the amount of damages claimed and "[t]he amount of attorney's fees and costs incurred to date, if any, that are being claimed" (§ 55.54, subd. (d)(7)) (hereafter, section 55.54(d)(7)).

---

[1] All further unspecified statutory references are to the Civil Code.

In this appeal, we address whether the required disclosure of claimed attorney fees and costs under section 55.54(d)(7) violates a plaintiff's attorney-client privilege. We conclude it does not.

Scott Johnson filed a complaint against Rubylin, Inc. (Rubylin), which owns a restaurant in Milpitas, alleging the presence of accessibility barriers. Rubylin requested that the trial court schedule an early evaluation conference. The court stayed the proceedings, scheduled the conference, and ordered Johnson to serve and file a statement containing the information required by section 55.54(d)(7). Johnson filed a statement under the statute but objected to disclosure of any information about the attorney fees and costs he had incurred. He did not include this information in his statement.

Rubylin sought sanctions against Johnson for his noncompliant statement, which Rubylin also asserted was untimely filed and had not been served on them. After a hearing, the trial court sanctioned Johnson under section 55.54, subdivision (e)(1). The court instructed Johnson to elect between sanctions in the form of either a ruling that the matter could proceed but attorney fees would not be recoverable or dismissal of the suit with prejudice. Johnson chose dismissal of the suit, and the court dismissed his suit with prejudice.

On appeal, Johnson argues that his refusal to disclose the amount of attorney fees was justified because the information is protected by the attorney-client privilege, as articulated by the California Supreme Court in *Los Angeles County Board of Supervisors v. Superior Court* (2016) 2 Cal.5th 282 (*LACBS*). Johnson also contends the trial court violated his due process rights in imposing sanctions.

For the reasons stated below, we reject Johnson's contentions regarding application of the attorney-client privilege to section 55.54(d)(7)'s

2

requirement that a plaintiff disclose claimed attorney fees and costs. We also conclude the trial court did not violate Johnson's due process rights in imposing sanctions.

## I. PROCEDURAL BACKGROUND[2]

In May 2024, Johnson filed a complaint against Rubylin alleging violations of the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and the Unruh Civil Rights Act (§ 51 et seq.), asserting accessibility barriers in a restaurant owned and operated by Rubylin. Johnson requested various forms of relief, including, as relevant here, "[r]easonable attorney fees, litigation expenses, and costs of suit, pursuant to 42 [United States Code section] 12205 and [] [Civil] Code [section] 52."

In its answer, Rubylin indicated that it filed or was filing concurrently with its answer a request for an early evaluation conference.[3] In October 2024, Rubylin filed a notice of stay of proceedings and early evaluation conference issued by the trial court (October 2024 order), which set the early evaluation conference for December 13, 2024.

The October 2024 order directed Johnson to file with the trial court and serve on Rubylin a statement containing a list of the specific issues forming the basis of his claims, "[t]he amount of damages claimed," "[t]he amount of attorney's fees and costs incurred to date, if any, that are being claimed," and any demand to settle the case in its entirety. The order required Johnson to serve and file this statement "at least 15 days before the date set for the early evaluation conference"—i.e., by November 30, 2024.

---

[2] Because the facts of the underlying dispute are not pertinent to the issues raised on appeal, we do not recount them.

[3] The request does not appear in the record on appeal.

On November 27, 2024, Rubylin filed in the trial court and served on Johnson a brief that set forth its evidence for the early evaluation conference, including the steps it had taken to remedy the alleged accessibility barriers.

On December 9, 2024, Johnson filed his statement in the trial court. His statement itemized the specific issues underlying his claims and claimed $8,000 in damages. Johnson objected to disclosure of the amount of claimed attorney fees and costs, asserting that the information was privileged under the principles articulated in *LACBS*. Johnson did not include in his statement the amount of claimed attorney fees and costs. As part of Johnson's settlement request, he demanded "$8,000 in damages, plus fees and costs to date to be determined by the [c]ourt." The record does not show that Johnson served the statement on Rubylin.

According to the minute order for the December 13, 2024 early evaluation conference hearing,[4] the parties were unable to reach a settlement. Rubylin requested the trial court issue sanctions against Johnson in the form of attorney fees and dismissal of the case. The court indicated it would set a hearing on sanctions.

On January 7, 2025, Rooney, Rubylin's counsel, filed a declaration in support of Rubylin's motion for sanctions. Rooney declared that Johnson had not timely filed the required conference statement and had not submitted the information required by section 55.54(d)(7) and the October 2024 order. Rooney requested the trial court either dismiss the case or order Johnson to

_____

[4] Johnson, his counsel, Chris Seabock, and Rubylin's counsel, Karen Rooney, appeared at the early evaluation conference hearing. This hearing was not reported.

pay Rubylin sanctions in the form of $700 in attorney fees. Rooney served her declaration on Johnson by e-mail on January 7, 2025.[5]

On January 16, 2025, the trial court conducted a hearing (January 2025 sanctions hearing) that addressed three separate motions for sanctions, one arising out of the instant matter between Johnson and Rubylin and two others arising out of complaints filed by Johnson against two other parties (Rubylin and the other defendants are hereafter referred to collectively as defendants). Each of the sanctions motions was based on Johnson's failure to comply with section 55.54(d)(7), particularly his refusal to state the amount of claimed attorney fees and costs.[6] The court heard the three sanctions motions concurrently.

The trial court decided the *LACBS* decision does not apply to section 55.54(d)(7) because the Supreme Court in that case had construed a different statute. The court concluded that Johnson's failure to disclose the claimed attorney fees amounts violated the Act and the October 2024 order and prejudiced the parties.

The judicial officer presiding over the January 2025 sanctions hearing was the same judicial officer who had presided over the early evaluation conference. She recalled that "the amount of the attorney's fees was a big sticking point in the settlement," and Johnson's refusal to provide the

_____

[5] The record does not contain a motion for sanctions by Rubylin or any written opposition by Johnson.

[6] Rubylin asserted during the hearing that Johnson failed to serve his conference statement on Rubylin, in violation of the statute and the October 2024 order. The trial court found that Johnson's counsel signed the statement on December 7, 2024, and filed it with the trial court on December 9, 2024, which did not comply with the timing set out in the October 2024 order. Johnson conceded during the hearing that he did not timely file his statement.

5

claimed attorney fees amount was "[t]he reason" the settlement discussions went "absolutely nowhere." The judicial officer stated that, contrary to Johnson's counsel Dennis Price's contention, Johnson would not disclose—even in camera—the amount of attorney fees he sought, telling the court only that the figure was between $10,000 and $20,000. The trial court found that the parties' settlement discussions stalled due to Johnson's refusal to disclose the amount of attorney fees he sought.

The trial court concluded that it would impose sanctions on Johnson based on his noncompliance with the statute and, in Rubylin's case, violation of the October 2024 order. In addition, the court found that Johnson's request for $10,000 to $20,000 in attorney fees for the matter "when the case file doesn't reflect" the outlay of that amount "smacks of gamesmanship" and "a lack of full straightforwardness with the court."

The trial court presented Johnson with two options for the form of sanctions: either a ruling that attorney fees are not recoverable or dismissal of the case. Johnson elected to have the court dismiss the matter "[w]ithout conceding the merits of the arguments." Johnson requested that the record "reflect that he's stipulating to the sanction," but that he had not waived his right to challenge the sanctions order.

On January 17, 2025, the trial court issued a written order referencing the January 2025 sanctions hearing, finding good cause for dismissal, and dismissing the case with prejudice (January 2025 order). We understand the court to have implicitly incorporated its oral findings during the January 2025 sanctions hearing into the January 2025 order.

## II. DISCUSSION

On appeal, Johnson argues his attorney fee invoices and the total amounts billed were for a " 'pending and active' " matter and therefore

6

privileged under the California Supreme Court's decision in *LACBS*. He contends that the trial court misinterpreted the *LACBS* decision in evaluating his objection on the basis of privilege. Johnson maintains that the purpose of section 55.54 is not obstructed by the withholding of attorney fee information.[7] He asserts that the court erroneously imposed sanctions on him.

In addition, Johnson argues "the simultaneous ruling on his objection [] coupled with the penalty for non-compliance" violated his due process rights. He maintains that he was not "given the opportunity to [(1)] comply with [the court's] order prior to being sanctioned," (2) have "a hearing to determine the question of his privilege" before being sanctioned, or (3) "seek review of a ruling of his privilege."

Rubylin disagrees with Johnson's substantive legal contentions. In addition, it argues that, under the doctrine of invited error, Johnson forfeited his right to appeal because the trial court offered Johnson two options for sanctions and Johnson " 'elected . . . dismissal.' "

*A. Invited Error*

We address as a threshold matter Rubylin's contention that Johnson forfeited his right to appeal by electing to have his case dismissed with

---

[7] In footnotes in his appellate briefing, Johnson "vigorously dispute[s]" and "vehemently disagrees" with the factual basis for the trial court's conclusion during the January 2025 sanctions hearing that his privilege claim "frustrated" settlement discussions during the conference. However, he neither disputed the court's finding during the hearing nor raised this issue under a separate heading in his opening brief. (See Cal. Rules of Court, rule 8.204(a)(1)(B) ["Each [appellate] brief must . . . [s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority."].) Johnson has therefore forfeited on appeal any objection to the court's factual finding. (*Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 68.)

prejudice as the sanction for his failure to comply with section 55.54(d)(7) and the October 2024 order.

"Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error. [Citations.] But the doctrine does not apply when a party, while making the appropriate objections, acquiesces in a judicial determination." (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212 (*Mary M.*).)

Johnson did not invite the trial court to impose sanctions on him for his failure to comply with section 55.54(d)(7). Rather, while conceding that he filed his early evaluation conference statement late, Johnson maintained that he was justified in his objection to providing the attorney fees and costs he was claiming. Johnson "merely acquiesced—after objecting—to the court's decision to" impose sanctions and selected amongst the two forms of sanctions offered by the court. (*Mary M.*, *supra*, 54 Cal.3d at p. 213.) We decide that Johnson's objection in the trial court to its sanctions decision renders inapplicable the invited error doctrine.

We therefore turn to the merits of Johnson's challenge to the Act.

*B. Early Evaluation Conference Statement*

    1. <u>Legal Principles and Standard of Review</u>

The Act applies "to any construction-related accessibility claim, . . . including, but not limited to, any claim brought under [s]ection 51, 54, 54.1, or 55." (§ 55.51.) It provides for the award of statutory damages (§ 55.56) and "reasonable attorney's fees and recoverable costs with respect to any construction-related accessibility claim" (§ 55.55).

Under the Act, once a defendant has been served with a summons and complaint asserting a construction-related accessibility claim, it may file a

request with the trial court to stay the action and schedule an early evaluation conference. (§ 55.54, subd. (b)(1).) The Act states in pertinent part that "it is the intent of the Legislature that the purpose of the evaluation conference shall include, but not be limited to, evaluation of all of the following . . .: [¶] . . . [¶] (4) Whether the case, including any claim for damages or injunctive relief, can be settled in whole or in part. [¶] (5) Whether the parties should share other information that may facilitate early evaluation and resolution of the dispute." (*Id.*, subd. (f).) Discussions during the early evaluation conference are subject to Evidence Code section 1152 (§ 55.54, subd. (f)), which provides that parties' settlement offers are inadmissible to prove a party's liability (Evid. Code, § 1152, subd. (a)).

Once a defendant has filed a request under section 55.54, subdivision (b)(1), the trial court must "immediately issue" an order that, among other requirements, stays the proceedings, schedules a mandatory early evaluation conference, directs the parties to appear at the conference, and directs the defendant to file an inspection report. (*Id.*, subd. (d).) The court order scheduling the early evaluation conference also must "direct[] the plaintiff to file with the court and serve on the defendant at least 15 days before the date of the conference a statement that includes, to the extent reasonably known, for use solely for the purpose of the early evaluation conference, all of the following: [¶] (A) An itemized list of specific conditions on the subject premises that are the basis of the claimed violations of construction-related accessibility standards in the plaintiff's complaint. [¶] (B) The amount of damages claimed. [¶] (C) The amount of attorney's fees and costs incurred to date, if any, that are being claimed. [¶] (D) Any demand for settlement of the case in its entirety." (*Id.*, subd. (d)(7).)

9

We review both the trial court's rejection of Johnson's privilege claim and its decision to impose sanctions for abuse of discretion. (See § 55.54, subd. (e)(1) ["A party failing to comply with any court order may be subject to court sanction at the court's discretion."]; *Kirchmeyer v. Phillips* (2016) 245 Cal.App.4th 1394, 1402 ["The determination whether a privilege applies likewise is subject to the abuse of discretion standard."].)

" 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " (*In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292, 299.) "Under the abuse of discretion standard, ' "[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." ' " (*G.F. Galaxy Corp. v. Johnson* (2024) 100 Cal.App.5th 542, 551; *Protect Agricultural Land v. Stanislaus County Local Agency Formation Com.* (2014) 223 Cal.App.4th 550, 561.) Although Johnson maintains that we must review the trial court's order de novo, "we apply the de novo standard only to the trial court's interpretation of the [law]. We review the court's application of the relevant [law] to the facts of the case for abuse of discretion." (*G.F. Galaxy Corp.*, at p. 551.)

" ' " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did

not intend." ' " ' " (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190 (*Smith*).) " ' " ' "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " ' " (*Ibid.*)

As appellant, Johnson bears the burden of establishing the trial court abused its discretion in the January 2005 order. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

2. Analysis

a. Attorney-client Privilege

The attorney-client privilege "is a legislative creation." (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 739.) The privilege allows a client to refuse to disclose communications with a lawyer that are intended to be confidential. (Evid. Code, § 954; *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 371 (*Roberts*).)

The scope of the attorney-client privilege is determined by statute. "[T]he Legislature has determined that evidentiary privileges shall be available only as defined by statute. (Evid. Code, § 911.) Courts may not add to the statutory privileges except as required by state or federal constitutional law [citations], nor may courts imply unwritten exceptions to existing statutory privileges." (*Roberts*, *supra*, 5 Cal.4th at p. 373.) "[B]ecause they prevent the admission of relevant and otherwise admissible evidence," (*McKesson HBOC, Inc. v. Superior Court* (2004) 115 Cal.App.4th 1229, 1236, citing *People v. Sinohui* (2002) 28 Cal.4th 205, 212), courts narrowly construe evidentiary privileges.

Relying on the California Supreme Court's decision in *LACBS,* Johnson contends section 55.54(d)(7)(C)'s requirement that he disclose the amount of

11

attorney fees and costs incurred violates the attorney-client privilege.  This is a question of law subject to our de novo review.

In *LACBS,* the California Supreme Court examined a request under the former California Public Records Act (PRA) (Gov. Code, § 6250 et seq., repealed and recodified by Stats. 2021, ch. 614, § 1) for the disclosure of a law firm's billing "invoices for work on currently pending litigation." (*LACBS*, *supra*, 2 Cal.5th at p. 288.)  By its terms, the PRA "allows agencies to withhold '[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege.' ([Gov. Code,] § 6254[, subd.] (k).)" (*Id*. at p. 291.)

In *LACBS,* our Supreme Court considered "whether invoices for work on currently pending litigation sent to the County of Los Angeles by an outside law firm are within the scope of the attorney-client privilege, and therefore exempt from disclosure under the [PRA]." (*LACBS*, *supra*, 2 Cal.5th at p. 288.)  Our Supreme Court held that the reference to "privilege" in Government Code section 6254, subdivision (k) " 'made the attorney-client privilege applicable to public records.' " (*LACBS*, at p. 291, quoting *Roberts*, *supra*, 5 Cal.4th at p. 370.)  The Supreme Court decided that, while "the attorney-client privilege does not categorically shield everything in a billing invoice from PRA disclosure" (*LACBS*, at p. 288; see *id*. at p. 300), "[t]he privilege . . . protects the confidentiality of invoices for work in pending and active legal matters." (*Id*. at p. 288.)  Nevertheless, the Supreme Court cautioned that "the contents of an invoice are privileged only if they either communicate information for the purpose of legal consultation or risk exposing information that was communicated for such a purpose." (*Id*. at p. 300.)

12

Unlike the PRA, which "*expressly* mak[es an] exception[] to disclosure for privileged communications" (*Citizens for Ceres v. Superior Court* (2013) 217 Cal.App.4th 889, 912), the Act at issue here contains no similar language. (See generally § 55.51 et seq.) Indeed, section 55.54(d)(7) plainly directs the plaintiff to disclose to the defendant the claimed amount of attorney fees and costs incurred. Neither section 55.54(d)(7) nor the remainder of the Act includes any privilege-based exception to the disclosure obligation.

The Act contains no indication that the Legislature intended the attorney-client privilege to apply to the early evaluation conference. To the contrary, the Legislature expressly provided for the conference to allow the parties to engage in settlement discussions and to facilitate resolution of the dispute. (§ 55.54, subd. (f).) As part of those procedures, it required plaintiffs to disclose the amount of claimed attorney fees and costs. (§ 55.54(d)(7)(C).) Not only does the statute lack a textual basis for application of the attorney-client privilege, doing so would frustrate the legislative purpose of promoting settlement of these disputes. (See *Smith*, *supra*, 11 Cal.5th at p. 190.)

Given the critical differences between the PRA and the Act with respect to the attorney-client privilege, the discussion in *LACBS* on which Johnson relies lacks relevance to his claim here. We decide the trial court properly rejected Johnson's claim that the attorney-client privilege excused his failure to comply with the statutory directive of section 55.54(d)(7) that he disclose in advance his claimed attorney fees and costs.

### b. Due Process

By refusing to provide Rubylin with the amount of claimed attorney fees and costs, Johnson violated the trial court's October 2024 order. If a party fails to comply with a court's order under section 55.54, the court may,

13

in its discretion, impose sanctions on the party.  (*Id*., subd. (e)(1).)  The court had the authority to sanction Johnson for his failure to comply with the October 2024 order.

Despite this statutory authority, Johnson contends that the trial court violated his due process rights by not giving him the opportunity to be heard on his privilege argument, comply with the January 2025 order prior to being sanctioned, and seek review of the court's ruling on the issue of privilege.  With respect to his second contention, Johnson asserts that because (in his view) "[t]he ruling against [him] was, in effect, a contempt finding," the court was required to give him an opportunity to cure.  With respect to his third contention, Johnson maintains that he "could have brought an interlocutory writ had an interim order been issued" on the question of privilege and the court should have issued such an order.  We are not persuaded.

Johnson was heard on the issue of privilege during the January 2025 sanctions hearing prior to the trial court's decision to impose sanctions.  The Act does not require the trial court to give the noncompliant party the opportunity to "cure" their noncompliance—by waiving its objection or otherwise—before imposing sanctions.  (See § 55.51 et seq.)  Johnson does not cite any provision of the Act or any other pertinent legal authority to support his contention.  Nor does he cite any legal authority or evidence in the record, or make any cogent analysis, to support his assertion that the court's ruling "was, in effect, a contempt finding."  Johnson's conclusory claim of error fails. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

As Johnson acknowledges in his appellate brief, he has been able to seek review of the trial court's privilege ruling in this court.  He does not cite any legal authority or engage in reasoned argument to support his conclusory assertions that he could have sought writ review of the court's ruling on the

14

application of attorney-client privilege to the Act and that the court erred in failing to issue an "interim order."

We discern no due process violation in the trial court's decision to impose sanctions on Johnson.

### III.  DISPOSITION

The January 17, 2025 order is affirmed.  Respondent is awarded costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

Danner, J.

WE CONCUR:

_____

Greenwood, P. J.

_____

Bromberg, J.

**H053076**
*Johnson v. Rubylin, Inc.*

| Trial Court: | Santa Clara County Superior Court No. 24CV439119 |
|---|---|
| Trial Judge: | Hon. JoAnne McCracken |
| Counsel for Plaintiff and Appellant | Seabock Price, Dennis Jay Price |
| Counsel for Defendant and Respondent | Karen Rooney Law and Karen Ann Rooney |

**H053076**
*Johnson v. Rubylin, Inc.*