Filed 7/8/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT HUGH GERNER, | B268621 |
| Petitioner, | (Los Angeles County Super. Ct. No. BS157033) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| DEPARTMENT OF CONSUMER AFFAIRS, | |
| Real Party in Interest. | |

Petition for writ of mandate seeking review of order of the Los Angeles Superior Court (Hon. Mark A. Borenstein) requiring compliance with an investigational administrative subpoena of the Department of Consumer Affairs.  Writ granted.

Baranov & Wittenberg, Gary Wittenberg for Petitioner.

Law Offices of Daniel H. Willick, Daniel H. Willick for California Psychiatric Association and California Medical Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Kamala D. Harris, Attorney General, Gloria L. Castro, Senior Assistant Attorney General, Judith T. Alvarado and Richard D. Marino, Deputy Attorneys General, for Real Party In Interest.

_____

Robert Gerner, M.D., a psychiatrist, petitioned on December 3, 2015, for review of a November 10, 2015 order of Respondent Court (Hon. Mark A. Borenstein), requiring compliance with an investigational administrative subpoena of the Department of Consumer Affairs, acting on behalf of the Medical Board of California (the Board), seeking a patient's records.[1] The patient had made a complaint against Dr. Gerner, but then withdrew the complaint and directed Dr. Gerner not to disclose his treatment records, which include medical histories, treatment notes, lab data, and communications with the patient.

We issued a stay and an order requiring Respondent Court to show cause why it should not be ordered to vacate and reverse its order compelling compliance with the Board's subpoena. Granting the petition, we hold that the Board has failed to establish any exception to the patient's invocation of the phychotherapist-patient privilege provided by Evidence Code section 1014, which precludes the subpoena's enforcement.[2]

**Background**

Dr. Gerner, licensed as a physician by the Board since 1973, was Board Certified in Psychiatry in 1977. On March 23, 2014, the Board received a written consumer complaint from one of Dr. Gerner's patients—identified in this proceeding as T.O.—regarding care he had received from Dr. Gerner. Concluding that the complaint indicated Dr. Gerner may have engaged in unprofessional conduct, gross negligence, or excess treatment and prescribing in violation of various Business and Professions Code provisions, the Board opened an investigation.

---

[1] The Board is an entity within the Department of Consumer Affairs, with responsibility for licensing, regulating, investigating, and disciplining physicians. (Bus. & Prof. Code, §§ 2001, 2004, 2460.) Our references to the Board include agencies and individuals to whom its investigative functions are delegated.

[2] Although an order requiring compliance with an administrative investigatory subpoena has been held to be appealable as a final judgment in a special proceeding, this court may also review the order's merits by extraordinary writ. (*Wood v. Superior Court* (1985) 166 Cal.App.3d 1138, 1140.)

On June 21, 2014, the investigation unit issued an Investigational Subpoena Duces Tecum To Produce Papers And Documents, for Dr. Gerner's treatment records concerning patient T.O. The subpoena commands Dr. Gerner to appear and "testify and to answer questions propounded to you in connection with the above titled investigation and to bring with you, and there produce, any and all writings . . . , including but not limited to, all the papers, books, accounts, documents and records described in the attached list," or to produce a certified copy and a Declaration of Custodian of Records for each requested record.[3]

Dr. Gerner did not produce the subpoenaed records.

Over a year later, on August 4, 2015, the Board filed a Motion and Petition For Order Compelling Compliance With Investigational Subpoena, supported by declarations of the investigator and a medical consultant. (*Awet Kidane, et al. v. Robert Hugh Gerner, M.D.*, Super. Ct. L.A. County No. BS157033.) The investigator's declaration, and his attached draft investigation report, sets forth the events leading up to the subpoena's issuance.[4]

The investigator's report states that on May 16, 2014, a few days after the investigator's first conversation with patient T.O., he received from the patient a published report of a case study in which the patient had participated (apparently commenced while he was living and being treated in Switzerland), published in a 2012

---

[3] The list of subpoenaed records "includes, but is not limited to: [¶] 1. all medical histories, treatment notes and records, physical examinations, test results, orders, prescription records, operative reports, consultation records, nursing notes; [¶] 2. all x-ray films and reports, MRIs and reports, CT scans and reports; [¶] 3. all pathology reports, laboratory data and fetal monitor strips; [¶] 4. all billing records; [¶] 5. all other data, information or record which would reveal all medical care provided to the patient."

[4] In his supporting declaration the investigating officer avers personal knowledge of facts "stated herein," and that if called he would testify "to the matters contained in this declaration and to the contents contained in the investigation report and its attachments relative to the tasks performed by me during the investigation." The attached investigation report is unsigned and undated, and is prominently watermarked "DRAFT" on each page.

issue of the Journal of Medical Case Reports, entitled, "High dose methylphenidate treatment in adult attention deficit hyperactivity disorder: a case report." The study had indicated that the patient's symptoms of adult ADHD and obsessive compulsive disorder dramatically improved only after treatment with higher-than-normal doses of Ritalin.

On May 20, 2014, the investigator met with the patient and obtained his authorization for release of Dr. Gerner's treatment records. He mailed the authorization and a request for copies of the patient's records to Dr. Gerner on June 9, 2014. The investigator also obtained (apparently without subpoena) Dr. Gerner's Controlled Substances Utilization Review (CURES) Report (Health & Saf. Code, § 11165), listing prescriptions Dr. Gerner had written for T.O.[5]

On June 12, 2014, however, the investigator received the patient's telephonic and email communication that he wanted to "rescind" his complaint against Dr. Gerner, stating it had been filed prematurely, when he was "not seeing clearly."[6] The next day the patient provided the investigator with a copy of his request to Dr. Gerner that his records not be released to the Board—a request that Dr. Gerner honored.[7]

The patient's March 23, 2014 complaint to the Board (later withdrawn) about Dr. Gerner's treatment had been in the form of an Online Complaint Summary on the Board's Web site. The complaint included two references to communications with Dr.

---

[5] The Board's access to information from this source apparently is an issue currently pending review in our Supreme Court. (*Lewis v. Superior Court* (2014) 226 Cal.App.4th 933 [172 Cal.Rptr.3d 491], review granted Sept. 17, 2014, S219811.)

[6] The Board admits that the patient sent the investigator the following email:
"Hello Mr. Saeki, regarding the conversation that we just had this afternoon, I am putting it in writing that I choose to withdraw the complaint against Dr. Robert Gerner. This was my decision and I was not influenced by anyone in any way to make this withdrawal." Case # 003937 Thank you for your time and for expediting this matter." The Board's admission adds the investigator's allegation that the patient sent the email after being advised by Dr. Gerner that he would resume the patient's treatment if the patient withdrew his complaint. The trial court did not address this allegation.

[7] Dr. Gerner did produce requested treatment records for another of his patients, who had consented to the disclosure.

4

Gerner: It stated that Dr. Gerner "has lied to me about my treatment, trying to trick me to believe that the medication has not been slowly changed and substituted"; and that the patient was so depressed and sick "that I would contact [Dr. Gerner] out of desperation at least twice a week trying to feel better . . . ."

The investigating officer's draft investigation report recounts a few additional communications about which patient T.O. had told him:

-- At the outset of his treatment the patient agreed with Dr. Gerner's opinion to decrease his medications from 500 milligrams per day (which he had received from his doctor in Switzerland) to 150 milligrams per day;

-- After treatment for about six months the patient persuaded Dr. Gerner to return him to his previous dosage, but Dr. Gerner "continuously told him this was too much medication";

-- After about eight months, when Dr. Gerner sensed the patient was not taking his dosage advice, Dr. Gerner "started threatening [the patient] by telling him that the DEA was going to come to his house and arrest him for possessing an excessive amount of controlled substances"; and

-- After about a year, and after having complained to the Board, the patient spoke to Dr. Gerner about changes in his body and reactions to the medication; Dr. Gerner told him he was taking too much medication, that it was having an effect on his body, and insisted it would work effectively if he took the recommended doses.

On July 6, 2014, the investigator asked the Board's physician-consultant, Dr. Jill Klessig, M.D., a licensee in internal medicine, to review the case. In her July 27, 2014 declaration supporting the subpoena request, Dr. Klessig concluded that "it appears possible that there was a serious violation of the standard of care committed by Dr. Gerner," based on what appeared to be unusually large doses of Ritalin—a central nervous system stimulant with serious potential side effects—and other related drugs.[8]

---

[8] Dr. Klessig's declaration noted Dr. Gerner's prescriptions for Ritalin and associated stimulants for patient T.O., in amounts ranging from two to more than 10 times the maximum daily recommended dose; described various potential dangers

5

After briefly discussing usual dosages and risks of overdosage, she concluded (without providing any reasons or authority) that "[i]n order to determine that the allegations are true, it is necessary to obtain the medical records of [the patient] from Dr. Gerner. The records should be the complete medical records, including (but not limited to) progress notes, phone calls, prescriptions and refills, billing, diagnostic testing, outside medical records, and referrals/consultations."

At the November 10, 2015 unreported hearing on the Board's motion for the subpoena's enforcement, Dr. Gerner asserted the psychotherapist-patient privilege on the patient's behalf (as instructed by T.O.) and refused to produce the subpoened records.

The trial court found that T.O. had validly withdrawn his consent to disclosure of his treatment records—a finding the Board does not contest. The court held that Business and Professions Code section 2225's exception to the physician-patient privilege applies also to Dr. Gerner's treatment records for patient T.O., rendering the psychotherapist-patient privilege inapplicable to protect those records from disclosure. And it held that Dr. Klessig's declaration provided "good cause" for the records' disclosure, satisfying the Board's burden to overcome patient T.O.'s constitutional right of privacy under article I, section 1 of the California Constitution.

This Petition followed.

The Petition challenging the trial court's order for the subpoena's enforcement raises two issues: Its primary contention is that the Board's authority to enforce its investigational subpoena is limited by the psychotherapist-patient privilege of Evidence Code section 1014, which precludes the subpoena's enforcement over the patient's valid objection. Second, the petition contends that even if the psychotherapist-patient privilege is for any reason inapplicable, the Board has failed to show a compelling interest in the records' disclosure, as is required by law to overcome patient T.O.'s right to privacy under California Constitution, article I, section 1; and that the Board's showing failed to

associated with the abuse of such drugs; and opined that Dr. Gerner's prescriptions placed patient T.O. at risk for both overdose and withdrawal.

6

satisfy even the "good cause" standard that the trial court erroneously applied in compelling the records' disclosure.

## Discussion

The Board is authorized under the Medical Practice Act to license, regulate, investigate, and discipline physicians. (Bus. & Prof. Code, § 2000 et seq.) It is empowered under Government Code sections 11180, et seq., to issue investigational subpoenas for information and materials that are reasonably relevant to its investigation of a physician's conduct, and to seek enforcement of its subpoenas. (Bus. & Prof. Code, § 2220; Gov. Code, §§ 11181, subd. (e), 11187.3; *Whitney v. Montegut* (2014) 222 Cal.App.4th 906, 910.) The Petition does not contend otherwise.

Evidence Code section 1014 sets forth the psychotherapist-patient privilege. When that privilege applies, it provides that "the patient . . . has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist," if the privilege is claimed either by the holder of the privilege, by someone authorized by the holder to claim the privilege, or by the psychotherapist, unless otherwise validly instructed. (Evid. Code, § 1014, subds. (a), (b), (c).) Section 1014 provides that the psychotherapist-patient privilege applies, "[s]ubject to Section 912 and except as otherwise provided in this article."[9]

We are instructed by our Supreme Court that the psychotherapist-patient privilege must be construed liberally in favor of the patient's right to privacy (*In re Lifschutz* (1970) 2 Cal.3d 415, 437); that any exception to the privilege must be construed narrowly; and that an exception applies "only when the patient's case falls squarely within its ambit." (*People v. Stritzinger* (1983) 34 Cal.3d 505, 513.)

The Petition in this proceeding contends that the psychotherapist-patient privilege applies to preclude enforcement of the subpoena for Dr. Gerner's treatment records

---

[9] Evidence Code section 912 sets forth circumstances showing waiver of privileges by disclosure (as discussed in greater detail below). Section 1014's reference to "this article" is to article 7, beginning with section 1010, concerning the psychotherapist-patient privilege.

7

concerning patient T.O. We conclude that the psychotherapist-patient privilege precludes the subpoena's enforcement; and that Business and Professions Code section 2225 does not apply to overcome the privilege or render it inapplicable, as the trial court erroneously found it does. We therefore grant the requested relief.

**I.** **The Psychotherapist-Patient Privilege of Evidence Code Section 1014 Applies To Protect The Subpoenaed Records From Disclosure.**

The Board has admitted that Dr. Gerner is a psychotherapist within the meaning of Evidence Code section 1010, subdivision (a); that T.O., his patient, validly withdrew consent for release of his treatment records; and that Dr. Gerner asserted the psychotherapist-patient privilege on the instruction of his patient, the holder of the privilege under Evidence Code section 1014, as he was required by law to do. (Evid. Code, § 1015.)

The Petition alleges (and the Board denies) that Dr. Gerner's treatment records for patient T.O. are privileged from disclosure under the psychotherapist-patient privilege of Evidence Code section 1014. It challenges the trial court's conclusion that Business and Professions Code section 2225 (or any other provision of law) applies to provide an exception to the psychotherapist-patient privilege. And it contends that, even if the privilege does not apply, the finding of good cause for the subpoena is not sufficient to overcome patient T.O.'s constitutional right to privacy.

**A. Standards of Review**

Statutory interpretation involves issues of law that we review de novo. (*Whitney v. Montegut*, *supra*, 222 Cal.App.4th at p. 911; *Szold v. Medical Bd. of California* (2005) 127 Cal.App.4th 591, 596.) "'Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.]'" (*Whitney v. Montegut*, *supra*, 222 Cal.App.4th at pp. 911-912.)

8

We review the trial court's factual determinations for substantial evidence, contradicted or uncontradicted, that will support them. (*Whitney v. Montegut, supra*, 222 Cal.App.4th at p. 912; *Jameson v. Five Feet Restaurant, Inc*. (2003) 107 Cal.App.4th 138, 143.) The standard of review applicable to a trial court's exercise of its discretionary power is abuse of discretion. (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1123.) An abuse of discretion is found where a court exceeds the bounds of reason in light of the applicable circumstances. (*Loomis v. Loomis* (1960) 181 Cal.App.2d 345, 348.)

**B. Business and Professions Code section 2225 Does Not Render the Psychotherapist-Patient Privilege Inapplicable to Medical Board Investigations.**

Business and Professions Code section 2225, subdivision (a), provides in its first sentence that "investigations or proceedings conducted under this chapter" are not governed by any provision of law "making a communication between a physician and surgeon or a doctor of podiatric medicine and his or her patients a privileged communication."[10] Granting the Board's motion to enforce its subpoena, the trial court held that because "[a]ll psychiatrists are physicians," this statutory exception to the physician-patient privilege "applies to the psychiatrist/patient relationship," and renders the privilege of Evidence Code section 1014 inapplicable to prevent disclosure of Dr. Gerner's treatment records. We conclude that the trial court's ruling represents a misapplication of section 2225.

Neither the Board's enforcement motion, nor the trial court's ruling, discussed Evidence Code section 1014 or the psychotherapist-patient privilege.[11] Seeking the subpoena's enforcement, the Board contended in the trial court that it needed to show

---

[10] Unidentified statutory references in the remainder of this opinion are to the Business and Professions Code.

[11] The Board's enforcement motion cited section 2225 only for the proposition that "it cannot be said that the investigational subpoena at issue implicates Patient T.O.'s constitutional right of privacy."

9

only that its subpoena "was regularly issued" within the meaning of Government Code section 11188.[12] The court ruled that the first four of the six items requested by the subpoena were specific, narrowly tailored, relevant, and material to the Board's appropriate inquiry, and that (although a supporting declaration from a psychiatrist rather than a general practitioner "would have been preferable"), the Board had shown "good cause" for the requested disclosures with respect to those items. Its ruling restricted enforcement of the subpoena "to items 1-4 of the subpoena," finding item 5 (billing records) not reasonably related to the Board's inquiry, and item 6 "too uncertain for enforcement."[13]

The Board defends the trial court's ruling that the records of Dr. Gerner's psychiatrist-patient communications with patient T.O. come within section 2225, subdivision (a)'s exception to the physician-patient privilege of Evidence Code section 994, because all psychiatrists are physicians (although that is not true of all psychotherapists). But section 2225, subdivision (a), does not mention the psychotherapist-patient privilege established by Evidence Code section 1014. No statute analogous to section 2225 creates an exception to the psychotherapist-patient privilege for investigative subpoenas such as that involved in this proceeding. And we are aware of no decision holding that section 2225 provides such an exception.

---

[12] Government Code section 11188 provides that trial courts are authorized to enforce investigative subpoenas that are "regularly issued." "The term 'regularly issued' means in accordance with the provisions of sections 11180, 11181, 11182, 11184 and 11185 of the Government Code providing for the matters which may be investigated, the acts authorized in connection with investigations, and the service of process." (*Fielder v. Berkeley Properties Co*. (1972) 23 Cal.App.3d 30, 39; *Medical Board of California v. Chiarottino* (2014) 225 Cal.App.4th 623.)

[13] As noted above, the enforcement order is ambiguous, because the subpoena sought five items, not six; and item 4 (not item 5) sought billing records. The record does not address these discrepancies, nor does it support the Board's need for X-ray films, MRI's, CT scans, or fetal monitor strips concerning Dr. Gerner's treatment of patient T.O.

The psychotherapist-patient privilege of Evidence Code section 1014 is independent from, and significantly different from, the physician-patient privilege to which it is equated by the trial court's ruling. As explained by the Law Revision Commission Comments to Evidence Code section 1014, the psychotherapist-patient privilege's enactment in 1965 was intended by the Legislature to encompass psychiatrists and other psychotherapists within the broader privilege protections that had until then applied only to certified psychologists under former section 2904: "A broad privilege should apply to both psychiatrists and certified psychologists. Psychoanalysis and psychotherapy are dependent upon the fullest revelation of the most intimate and embarrassing details of the patient's life. . . . Unless a patient . . . is assured that such information can and will be held in utmost confidence, he will be reluctant to make the full disclosure upon which diagnosis and treatment . . . depends." To address this issue, the Commission explained, Evidence Code section 1014 "establishes a new privilege that grants to patients of psychiatrists a privilege much broader in scope than the ordinary physician-patient privilege." These Law Revision Commission Comments, according to our Supreme Court, constitute the Legislature's acknowledgment "that the unique nature of psychotherapeutic treatment required and justified a greater degree of confidentiality than was legally afforded other medical treatment" by the physician-patient privilege of Evidence Code section 994. (*In re Lifschutz, supra*, 2 Cal.3d at p. 434, fn. 20; see *Smith v. Superior Court* (1981) 118 Cal.App.3d 136, 139 [Comment to Evidence Code section 1014 represents Legislature's recognition that psychotherapist-patient relationship's unique nature requires greater protection than that afforded the physician-patient relationship].)

The expanded privilege of Evidence Code section 1014 embodies the Legislature's intentional legislative balance: "Although it is recognized that the granting of the privilege may operate in particular cases to withhold relevant information, the interests of society will be better served if psychiatrists are able to assure patients that their confidences will be protected." (Cal. Law Revision Com. com. to Evid. Code, § 1014.) The Comments also note a number of ways in which the expanded psychotherapist-

11

patient privilege is distinguished from, and broader than, the physician-patient privilege. Specifically, they note that certain exceptions to the physician-patient privilege—expressly including exceptions for administrative proceedings—do not apply, or are "considerably narrower," for the psychotherapist-patient privilege. The psychotherapist-patient privilege does apply, for example, in criminal cases, and there is no statutory exception to its application in administrative proceedings, as there is for the physician-patient privilege. (*Ibid*.)

Evidence Code section 1014's admonition that the psychotherapist-patient privilege applies "except as otherwise provided in this article" expressly precludes the application of exceptions that are not within article 7 of division 5 (encompassing sections 1010-1027) of the Evidence Code. That is the holding of *City of Alhambra v. Superior Court* (1980) 110 Cal.App.3d 513, in which the court reviewed a discovery order compelling disclosure of information concerning possible psychiatric treatments of a party to pending litigation. The trial court's order in that case had held that compelling disclosure was proper under Evidence Code section 999, which provides an exception to the physician-patient privilege.[14] (*City of Alhambra v. Superior Court*, *supra*, 110 Cal.App.3d at p. 519.) But the Court of Appeal held that the cited exception cannot be applied to the psychotherapist-patient privilege: "Section 999 is applicable only to article 6 of division 8, chapter 4 of the Evidence Code, the physician-patient privilege. There is no comparable exception in article 7 of division 8, chapter 4, the psychotherapist-patient privilege, which is involved here. It is not the function of the judiciary to create such an exception." (*Ibid.*) So too, Evidence Code section 1007 provides that the physician-patient privilege does not apply in proceedings to determine whether a right or license

---

[14] Evidence Code section 999 provides that "[t]here is no privilege under this article as to a communication relevant to an issue concerning the condition of the patient in a proceeding to recover damages on account of the conduct of the patient if good cause for disclosure of the communication is shown."

12

should be revoked, suspended, or conditioned; but the Code includes no analogous exception to the psychotherapist-patient privilege for such proceedings.[15]

Evidence Code section 910 provides that "the provisions of this division [relating to privileges] apply in all proceedings"; and section 901 defines "proceedings" to include "any . . . investigation . . . in which, pursuant to law, testimony can be compelled to be given." (Evid. Code, § 901; *People v. Wharton* (1991) 53 Cal.3d 522, 560.) The Law Revision Commission Comments to Evidence Code section 1014 also explain that the "psychotherapist-patient privilege applies in all proceedings"; and that although exceptions render the physician-patient privilege inapplicable to certain administrative proceedings (e.g., Evid. Code, § 1007), "[n]o similar exceptions are provided in the psychotherapist-patient privilege." (See *In re Lifschutz*, *supra*, 2 Cal.3d at p. 438 & fn. 24 [psychotherapist-patient privilege may apply to disclosures in discovery]; *People v. Pack*, 201 Cal.App.3d 679, 685, disapproved on another ground in *People v. Hammon* (1997) 15 Cal.4th 1117, 1123 [psychotherapist-patient privilege overrides Welfare and Institutions Code authorization for disclosure of privileged mental health care records in juvenile proceedings].)

The Legislature has demonstrated its intention, and its ability, to identify when an exception to the physician-patient privilege applies also to the psychotherapist-patient privilege, and when it does not. Penal Code section 11171.2, for example, specifies that its exception for information reported pursuant to the Child Abuse and Neglect Reporting Act applies to both these privileges; however, the Legislature has created a criminal-proceeding exception to physician-patient privilege, but "has not done the same for the psychotherapist-patient privilege." (*Menendez v. Superior Court* (1992) 3 Cal.4th 435, 456, fn. 18.)

---

[15] Evidence Code section 1007 provides that "[t]here is no privilege under this article [article 6, relating only to the physician-patient privilege] in a proceeding brought by a public entity to determine whether a right, authority, license, or privilege (including the right or privilege to be employed by the public entity or to hold a public office) should be revoked, suspended, terminated, limited, or conditioned."

13

Section 2225 itself precludes any implication that its exception to the physician-patient privilege was intended by the Legislature to create an exception also to the psychotherapist-patient privilege, or to immunize investigative administrative subpoenas from protection under that privilege, even without Evidence Code section 1014's express exclusion of exceptions other than those provided in that article. Subdivision (b) of section 2225 authorizes the Board to inquire into any alleged violations of laws or rules relevant to the practices of licensees, and authorizes it to inspect relevant documents, "in accordance with the following procedures," which authorize inspection of patient records "where patient consent is given" (subd. (b)(1)); and inspection of documents "not involving medical records attributable to identifiable patients" (subd. (b)(2)). These procedural limitations on the Board's authority to inspect patient records are mandatory, as shown by the fact that licensees' failures to produce requested documents may be sanctioned, but only if they have been "lawfully requested . . . in accordance with this section." (§ 2225, subd. (e).) These express limitations would be unnecessary if, as the Board argues, all patient records were open to its subpoena, inspection, and copying without regard to patients' consent, privileges, or privacy rights.

The inapplicability of the section 2225 exception is apparent also from the Legislature's intention that enactment of Evidence Code section 1014's psychotherapist-patient privilege would expand the privilege to apply uniformly to all psychotherapists—both those that are also licensed as physicians, and those that are not—rather than just to clinical psychologists, as under the privilege's earlier version. The trial court's interpretation that section 2225 is applicable to those psychotherapists who are licensed as physicians, would create exactly the patchwork of privilege exceptions the Legislature sought to eliminate—rendering the privilege applicable to protect patients' communications with non-physician psychologists, clinical social workers, credentialed school psychologists, marriage and family therapists, and certain nurses and other counselors (Evid. Code, § 1010, subds. (a)–(p)), while illogically singling out psychiatrist-patient communications for exclusion from the privilege's application. (See Cal. Law Revision Com. com. to Evid. Code, § 1014.)

Our failure to affirm the trial court's enforcement of the Board's subpoena is not inconsistent with the recent decision in *Kirchmeyer v. Phillips* (2016) 245 Cal.App.4th 1394. That decision affirmed a trial court's refusal to enforce a Board subpoena for a psychiatrist's patient records, based on findings—consistent with the decision in this case—that the subpoenaed medical records "were protected by the psychotherapist-patient privilege of Evidence Code section 1014." (*Id.* at p. 1398.)[16] The opinion goes on to conclude that the Board "failed to show a compelling interest" in the documents' disclosure, and "has not established that an exception to the psychotherapist-patient privilege" applied to the records. (*Ibid.*) Because the subpoena's enforcement was denied, the *Kirchmeyer* decision provides no authority for the proposition that either good cause, or a compelling interest (neither of which was shown in that case), would be sufficient to overcome the statutory privilege.

Evidence Code section 1014 unambiguously provides that confidential communications between a psychotherapist and his or her patient are privileged from disclosure, absent a valid waiver or exception. The exception to the physician-patient privilege expressed in the first sentence of section 2225 does not purport to apply to the psychotherapist-patient privilege; neither the language of the statute, nor the intentions expressed by the Legislature in its legislative history of Evidence Code section 1014, can be read to bring it within that exception. As in *City of Alhambra v. Superior Court*, *supra*, 110 Cal.App.3d at page 519, "It is not the function of the judiciary to create such an exception."

### C.  No Waiver of the Statutory Privilege is Shown.

The psychotherapist-patient privilege may be waived by the patient's voluntary disclosure of confidential information. (See Evid. Code, §§ 912, subd. (a), 1016; *Roberts v. Superior Court* (1973) 9 Cal.3d 330, 340.) However, the "waiver of an important right

---

[16] In *Kirchmeyer v. Phillips*, the Board's investigation of the psychiatrist was focused not on unprofessional conduct involving his treatments or prescriptions, but on unprofessional conduct arising from his romantic affair with the patient, as alleged by her husband.

must be a voluntary and knowing act done with sufficient awareness of the relevant circumstances and likely consequences." (*Roberts v. Superior Court*, *supra*, 9 Cal.3d at p. 343; *San Diego Trolley, Inc. v. Superior Court* (2001) 87 Cal.App.4th 1083, 1092.) And even when a patient has waived the privilege by disclosing confidential information, "the patient does not lose all privacy interest in information otherwise protected by the privilege." (*San Diego Trolley, Inc. v. Superior Court*, *supra*, 87 Cal.App.4th at p. 1092.) "[A]ny waiver must be narrowly construed and limited to matters 'as to which, based upon [the patient's] disclosures, it can reasonably be said [the patient] no longer retains a privacy interest'" (*ibid.*); and even then, the patient still retains "the more general right to privacy protected by the state and federal Constitutions." (*Id.* at pp. 1092, 1095.)

It could perhaps be argued that patient T.O.'s statements, as reported by the Board's investigator, could support a determination that he waived confidentiality.[17] But the Board sought no such finding in the trial court (or in this court); the trial court made no such finding; and neither party has briefed the existence or nonexistence of a waiver of the privilege, or suggested that it should be addressed by this court. Ordinarily, "arguments not asserted below are waived and will not be considered for the first time on appeal." (*Ochoa v. Pacific Gas & Electric Co*. (1998) 61 Cal.App.4th 1480, 1488, fn. 3; see Gov. Code, § 68081 [requiring notice and opportunity to brief unbriefed issues].) However, some discussion may clarify the issue.

Neither mere disclosure of the existence of psychotherapist-patient communications, nor even disclosure of the subject of those communications, is necessarily enough to waive the psychotherapist-patient privilege. "Under Evidence Code section 912, subdivision (a), a waiver requires disclosure 'of a significant part of

---

[17] The investigator's recitation facts gleaned from his initial conversation with patient T.O. is set forth in an unsigned draft of his investigation report. His supporting declaration does not actually incorporate the unsigned draft, but it states that if called as a witness he would testify competently to its contents "relative to the tasks performed by me during the investigation." Which facts concerning T.O.'s treatment are and are not within the rubric of "tasks performed by me during the investigation" is, however, uncertain at best.

16

the communication' and thus the Supreme Court has 'made it clear that the mere disclosure of the existence of the psychotherapist-patient relationship does not reveal a significant part of the communication and thus does not constitute a waiver.'" (*San Diego Trolley, Inc. v. Superior Court*, *supra*, 87 Cal.App.4th at p. 1092, quoting *Roberts v. Superior Court*, *supra*, 9 Cal.3d at p. 340; *People v. Wharton*, *supra*, 53 Cal.3d at p. 554.) "Even when a patient has revealed the purpose of psychiatric treatment, no waiver of the privilege occurs." (*San Diego Trolley, Inc. v. Superior Court*, *supra*, 87 Cal.App.4th at p. 1093.) "'There is a vast difference between disclosure of a general description of the object of . . . psychotherapeutic treatment, and the disclosure of all or a part of the patient's actual communications during psychotherapy.'" (*Id.* at pp. 1092-1093, quoting *Roberts v. Superior Court*, *supra*, 9 Cal.3d at p. 340.)

Gone are the days—if such days ever existed—when disclosure of a confidential communication, or part of one, would constitute a wholesale waiver of the privilege for all purposes, permitting free access to otherwise-privileged communications. That proposition "is unsupported"; "if the communication is insignificant in content or the disclosure is narrow in scope, the patient's privacy may be implicated only slightly." (*Menendez v. Superior Court*, *supra*, 3 Cal.4th at p. 448.)

"Any broader interpretation of the patient litigant waiver must be rejected because 'it might effectively deter many psychotherapeutic patients from instituting any general claim for mental suffering and damage out of fear of opening up all past communications to discovery. This result would clearly be an intolerable and overbroad intrusion into the patient's privacy, not sufficiently limited to the legitimate state interest embodied in the provision and would create opportunities for harassment and blackmail.'" (*San Diego Trolley, Inc. v. Superior Court*, *supra*, 87 Cal.App.4th at p. 1093, quoting *In re Lifschutz*, *supra*, 2 Cal.3d at p. 435.)

And in this case there is an additional reason that any waiver of the privilege (if a court were to determine there was such a waiver) should be interpreted narrowly, and with caution: The Board's Authorization For Release of Medical Information that T.O. signed provides that, in signing, "I understand that I have the right to revoke this

17

authorization," effective upon notification except to the extent it has been relied upon. T.O.'s authorization for release of his treatment records thus was conditioned upon his right and ability to withdraw that authorization—expressly promised by the Board; and the trial court expressly held that he had in fact validly done so before the Board issued its subpoena. While the privilege may ordinarily be found to be waived by voluntary disclosures of otherwise-privileged communications, T.O.'s disclosures in this case were conditional, and his exercise of that condition by withdrawing his authorization could be interpreted to have negated any waiver resulting from the authorization. If withdrawal of his authorization for disclosure of his treatment records to the Board cannot in fact prevent disclosure of his treatment records, what was the meaning and purpose of the Board's representations and promises about his right to withdraw his authorization?[18]

In *Menendez v. Superior Court*, *supra*, 3 Cal.4th 435, the trial court had held that an audiotape of the psychiatrist's notes of certain therapy sessions with his patient had lost its privileged status because "the communications at [those sessions] 'were simply restatements . . . and amplifications of' similar communications" made at earlier unprivileged therapy sessions. (*Id.* at p. 445.) The Supreme Court found that reasoning to be a fatal misstep, however: "It is manifest . . . that the privilege covers *all* communications within its ambit. There is no basis to limit its scope to the first communication dealing with a given subject." (*Id.* at p. 454, original italics.) Despite the trial court's conclusion that the communications at the later sessions were rendered nonconfidential by the earlier disclosure of similar communications on the same subject, the privilege remained intact. "[T]o our mind, what is spoken at one time cannot reasonably be deemed to reveal what is not yet spoken." (*Id.* at p. 455.) "In categorically rejecting the notion that the privilege is lost as soon as any communication loses its confidential status, the court in *Menendez v. Superior Court* focused on the purpose of the privilege, which is to protect the patient's 'right to privacy and promote the

---

[18] The patient's rights were also compromised in this case by the Board's admitted failure to redact his name and identity from its publicly filed papers, as expressly required by law. (§ 2225, subd. (a).)

psychotherapeutic relationship.'" (*San Diego Trolley, Inc. v. Superior Court*, *supra*, 87 Cal.App.4th at p. 1091, quoting *Menendez v. Superior Court*, *supra*.)[19]

The scope of the communications disclosed by the patient in this case, according to the Board investigator's declaration, does not reflect an all-encompassing waiver of confidentiality with respect to his treatment records. As set forth above, the patient's initial complaint had included two oblique references to communications with Dr. Gerner: that Dr. Gerner "has lied to me about my treatment, trying to trick me to believe that the medication has not been slowly changed and substituted"; and that he "would contact [Dr. Gerner] out of desperation at least twice a week trying to feel better . . . ." The investigator's draft report refers to a few additional alleged communications: that Dr. Gerner advised the patient to decrease his dosage to a fraction of the daily amounts he had been receiving while in Switzerland; that after many months the patient had persuaded Dr. Gerner to return him to his previous dosage, though Dr. Gerner continuously advised him that this was too much; and that Dr. Gerner advised that excessive medication was affecting the patient, and the recommended dosages would be more effective.

The Board has made no contention, in this court or the court below, that these limited disclosures constitute a waiver of the entire contents of the patient's communications with Dr. Gerner (nor has the patient argued that these statements are themselves beyond the Board's reach). Yet even where it is the patient who has placed his own mental condition in issue (thereby triggering the patient-litigant exception to the

---

[19] The "patient-litigant exception [to the psychotherapist-patient privilege] allows only a limited inquiry into the confidences of the psychotherapist-patient relationship, compelling disclosure of only those matters directly relevant to the nature of the specific 'emotional or mental' condition which the patient has voluntarily disclosed and tendered in his pleadings or in answer to discovery inquiries. Furthermore, even when confidential information falls within this exception, trial courts, because of the intimate and potentially embarrassing nature of such communications, may utilize the protective measures at their disposal to avoid unwarranted intrusions into the confidences of the relationship." (*In re Lifschutz*, *supra*, 2 Cal.3d at p. 431.)

19

privilege under Evidence Code section 1016), still the scope of the waiver is narrowly limited, and "depends upon the nature of the injuries which the patient-litigant himself has brought before the court." (*In re Lifschutz*, *supra*, 2 Cal.3d at p. 435.)[20] "In determining whether communications sufficiently relate to the mental condition at issue to require disclosure, the court should heed the basic privacy interests involved in the privilege [citation]; in general, the statutory psychotherapist-patient privilege 'is to be liberally construed in favor of the patient.'" (*Id*. at p. 437.)

Here, the patient can hardly be seen as having himself brought the issue of his mental condition before the court (as is the case when a patient invokes the patient-litigant exception discussed in *In re Lifschutz*, *supra*.) The patient's complaint to the Board did not purport to seek redress (as would trigger the psychotherapist-litigant exception); and even if it were construed to do so, it might well be construed as a disclosure necessary "for the accomplishment of the purpose for which the psychotherapist is consulted," precluding any waiver. (Evid. Code, § 1012, subd. (d); *Menendez v. Superior Court*, *supra*, 3 Cal.4th at p. 441, fn. 3.)[21]

Thus, although we have not determined that no finding of a waiver of the psychotherapist-patient privilege could be justified on this record, neither is it apparent

---

[20] Evidence Code section 1016 provides: "There is no privilege under this article as to a communication relevant to an issue concerning the mental or emotional condition of the patient if such issue has been tendered by: [¶] (a) The patient."

[21] Evidence Code section 912, subdivision (d), provides in pertinent part that "A disclosure in confidence of a communication that is protected by . . . [the psychotherapist-patient privilege] . . . when disclosure is reasonably necessary for the accomplishment of the purpose for which the . . . psychotherapist . . . was consulted, is not a waiver of the privilege." Patient T.O. might be found to have reasonably believed that his complaint to the Board would aid his ability to accomplish the treatment for which he consulted Dr. Gerner.

Moreover, nothing on the Board's Web site advised him that his confidentiality or privilege would be waived by filing a complaint on the Board's Web site, or answering the investigator's questions about it. The statutory framework underlying the Board's investigative authority (if he were aware of it), might have led him to believe that his identity and confidential communications would remain protected (§ 2225, subd. (a))—a statutory obligation the Board admittedly breached in this case.

20

that a waiver contention—if it were made—would have sufficient support to justify enforcement of any portion of the subpoena.[22]

## Conclusion

Dr. Gerner, and amicus curiae California Psychiatric Association and California Medical Association, contend that the psychotherapist-patient privilege applies to preclude the subpoena's enforcement—but that even if it does not, a compelling interest (rather than mere "good cause," as found by the trial court) would be required to overcome the patient's privacy rights under article I, section 1 of the California Constitution. (See *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669, 679 [any incursion into the area of constitutionally protected privacy "must be justified by a compelling interest"]; see also *People v. Stritzinger*, *supra*, 34 Cal.3d at p. 511 [constitutional right to privacy "may yield in the furtherance of compelling state interests"]; see also *White v. Davis* (1975) 13 Cal.3d 757, 775 [suggesting constitutional privacy rights require that covert police surveillance of university class content and discussion must be justified by compelling state interest].) The amici contend also that the record in this case is insufficient to support either a finding of a compelling interest for the subpoena's enforcement, or even the trial court's good cause finding. In its opposition the Board argues that "ample good cause existed" for the subpoena, but does not address whether that is the required standard.

In light of our determination that the psychotherapist-patient privilege protects T.O. from disclosure of his subpoenaed records and the trial court erred by holding that it

---

[22] We decline the invitation to embark on the required factual determinations that would underlie a determination of the scope of an appropriate waiver (if any)—a task that would appropriately be reserved for the trial court. We also eschew the suggestion that the subpoena's enforcement should be affirmed in light of the oral-argument comment by counsel in this court, that the Board would be satisfied by a subpoena of far narrower scope than that ordered by the trial court. The parties have had no opportunity to brief that suggestion, and no such subpoena terms have been articulated or offered. Moreover, we are aware of nothing that would prevent the Board from seeking a subpoena of appropriate scope at any time.

21

does not, the subsidiary issues—the questions whether in the absence of an applicable privilege the standard that would be required in order to overcome the patient's constitutional right to privacy would be "good cause" or "compelling interest," and whether the record in this case would support a finding that the applicable standard had been met—must await review in another case.

## Disposition

Let a writ of mandate issue directing Respondent Court to vacate that portion of its order of November 10, 2015, compelling Dr. Gerner's compliance with the Board's subpoena for his records relating to patient T.O., and to enter a new and different order denying the subpoena's enforcement. Petitioner Dr. Gerner to recover his costs.

CERTIFIED FOR PUBLICATION

CHANEY, Acting P. J.

I concur:

JOHNSON, J.

22

KRIEGLER, J., Dissenting

Gerner v. Superior Court

B268621

My colleagues hold that the Medical Board of the State of California (the Board) cannot use its statutory investigational subpoena power to obtain a psychiatrist's records to determine whether the doctor overprescribed dangerous and abused prescription drugs. I respectfully dissent.

The facts supporting the investigational subpoena are not in dispute. A patient files an online complaint with the Board regarding the manner in which his psychiatrist prescribed controlled substances to treat the patient's Attention Deficit Hyperactivity Disorder (ADHD). The patient then expands upon his complaint by voluntarily submitting to an interview with the Board's investigator in which the patient freely discusses the prescriptions issued by the psychiatrist, his statements to the psychiatrist, and the doctor's responses. Despite the Board's authority to regulate the practice of medicine, a declaration from an expert that the prescriptions deviated from the standard of care, the complaint filed by the patient, and the patient's voluntary waiver of the psychotherapist-patient privilege by his complete disclosure of the contents of communications with his psychiatrist regarding the prescriptions, my colleagues hold that the Board has no power to review the psychiatrist's records pertaining to prescriptions for dangerous drugs through use of an investigational subpoena authorized by Business and Professions Code section 2225. This is incorrect.

The narrow issue this court should address is simply whether respondent court abused its discretion in enforcing the Board's investigational subpoena issued for the purpose of discovery of petitioner Dr. Robert Hugh Gerner's records relating only to the prescribing of controlled substances in connection with his treatment of a patient suffering from ADHD. There was no abuse of discretion. In writing prescriptions, Dr. Gerner was acting in his capacity as a physician and was subject to investigation by the

Board for alleged misconduct.  Respondent court reasonably ordered enforcement of the subpoena based on its review of the prescription records already obtained by the Board, a declaration by the Board's expert physician stating that the prescriptions for the patient were outside the standard of care and in amounts up to 10 times the recommended dosage, and the patient's extensive disclosure of his communications with Dr. Gerner, which waived the psychotherapist-patient privilege as to the patient's treatment of his ADHD with prescriptions for Ritalin and Concerta[1] issued by Dr. Gerner.

**Details of the Patient's Disclosure of Confidential Communications with Dr. Gerner**

My colleagues conclude the patient did not make "an all-encompassing waiver of confidentiality with respect to his treatment records."  The patient did waive the psychotherapist-patient privilege as to his records pertaining to Dr. Gerner's prescribing practices, by freely and voluntarily describing what appears to be the entirety of his communications with Dr. Gerner on this subject.  It would be difficult to imagine a more complete waiver by disclosure than what took place in this case.

### *The Patient's Online Complaint*

On March 23, 2014, the patient filed an online complaint with the Board.  The complaint stated[2] that Dr. Gerner "has manipulated the treatment that I have been receiving," and he "has lied to me about my treatment, trying to trick me to believe that the medication has not been slowly changed and substituted."  The patient stated his "mental and physical health have dramatically worsened and despite my pleas for him to

---

[1] According to the declaration of the Board's medical expert, Concerta is "a long acting form" of Ritalin.

[2] Quoted portions of the complaint contain corrections of numerous typographical errors in the original.

2

stop it just continues" and as a result, "my life quality has diminished and replaced with fear." The patient explained that he moved from Switzerland "with a pre-established dose of Concerta" to which he was very well-adjusted. "[T]he leading professor of psychiatry in Switzerland" recommended continuing that dosage, but Dr. Gerner "simply disregarded the medical findings and did his own thing, and I have been suffering ever since I have been under his care. He consistently messes with the medication which has made me very depressed and sick, so much so that I would contact him out of desperation at least twice a week trying to feel better but it continued."

### *Interview with the Board's Investigator*

The investigational subpoena was supported by a declaration of the Board's investigator. Attached to the investigator's declaration was his investigation report. The investigator's declaration incorporated by reference the investigation report by stating: "If called as a witness . . . I would testify competently to . . . contents contained in the investigation report and its attachments relative to the tasks performed by me during the investigation." The investigation report reveals in pertinent part the following.

The patient was interviewed by the investigator on May 20, 2014. He signed a release permitting the Board to obtain his medical records from Dr. Gerner. The patient stated he was diagnosed with ADHD as a child, and struggled with the condition throughout his life. He disclosed his refusal of treatment for a time, followed by his participation in treatment in Zurich, Switzerland. Beginning in 2007, the patient was treated by Dr. Bridget Woggen. For the first three-to-four years he was taking 325 or 378[3] milligrams of Ritalin daily. Eventually his dosage increased to 500 milligrams per day during his participation in a case study from June 2012 through January 2013.

---

[3] Because the petition contains a poor copy of the investigation report, we cannot determine whether the patient was taking 325 or 378 milligrams.

The patient moved to California in January 2014, and was referred by a friend to Dr. Gerner. Dr. Woggen sent the patient's case study and medical records to Dr. Gerner, so the patient could continue with the same treatment. According to the patient, Dr. Gerner ignored the case study and medical records and immediately decreased his dosage from 500 milligrams per day to 150 milligrams. The patient agreed with Dr. Gerner's opinion and tried the 150 milligrams per day. In the first month, the patient noticed a significant change in his body and behavior. He had body pain, became more distracted, was anxious, and less productive. The patient "pled with Dr. Gerner to go back to his previous dosage. Dr. Gerner did not agree with [the patient] but provided him with prescriptions consistent with the dosages he received while living in Zurich."

The patient saw Dr. Gerner twice monthly over the next five or six months, "and was able to convince Dr. Gerner to put him back at his previous dosage." Dr. Gerner provided the patient with prescriptions for 150 to 200 54 milligram tablets of Concerta twice a month, "but continually told him this was too much medication." The patient sensed that Dr. Gerner was getting frustrated that the patient was not taking his advice regarding dosage. Dr. Gerner started threatening the patient by telling him that the Drug Enforcement Agency (DEA) "was going to come to his house and arrest him for possessing an excessive amount of controlled substances."

At some point,[4] the patient told Dr. Gerner about a complaint he had filed. Dr. Gerner told the patient to retract the complaint or he would not provide treatment to the patient. The patient withdrew the complaint. Dr. Gerner's attitude toward the patient then "changed dramatically" in that the doctor no longer threatened him about the DEA coming to his house and he did not argue with him about his medication.

The patient believed that Dr. Gerner changed his medications, "despite the fact the prescriptions were the same as before." The patient again noticed changes in his body. He felt like the medication was making him sick and tasted differently. The patient

---

[4] The exact date of this complaint is unclear, and cannot be determined from the context of the investigation report.

4

began to gain weight and was unable to maintain focus. He spoke to Dr. Gerner about these issues. Dr. Gerner told the patient "he was taking too much medication and it was having a negative effect on his body. Dr. Gerner insisted that [the patient] take his recommended doses and it would work effectively. He often yelled at [the patient] in front of other patients because [the patient] refused to take his recommended doses."

In June 2014, the patient notified the investigator he wished to withdraw the complaint against Dr. Gerner and directed Dr. Gerner not to produce his medical records to the Board.

### *The Board's Expert's Declaration*

The Board supported its efforts to enforce the investigational subpoena with the declaration of Dr. Jill Klessig, the District Medical Consultant for the Board. Dr. Klessig opined that from the information she received from the Board's investigator, "it appears possible that there was a serious violation of the standard of care committed by Dr. Gerner." The patient alleged that Dr. Gerner prescribed him amounts of Ritalin that varied from 150 milligrams to 500 milligrams per day, while the "starting dose is 10 mg/day, with a recommended maximum of 60 mg/day." The patient was also prescribed "Concerta, a long lasting form of the drug in doses up to 720 mg/day," while the "maximum daily recommended dose is 72 mg." Dr. Klessig stated that Ritalin is a schedule II drug containing "a black box warning." Ritalin is a central nervous system stimulant that has serious potential side effects, and it is a known drug of abuse "due to its amphetamine like action." She described the various side effects of large doses of Ritalin, including "irritability, irrational/psychotic type behavior, body tics, brain hemorrhage, abnormal heart beat, seizures, elevated blood pressure and numerous other serious (potentially fatal) symptoms."

## DISCUSSION

When Dr. Gerner refused to comply with the investigational subpoena, the Board moved to enforce the subpoena before respondent court. Over Dr. Gerner's objection, respondent court ordered Dr. Gerner to comply. Dr. Gerner then petitioned this court for extraordinary relief. The petition presents two arguments: (1) the patient's records are privileged from disclosure under the psychotherapist-patient privilege of Evidence Code section 1014,[5] and (2) the records are separately protected from disclosure under the right to privacy in Article 1, section 1 of the California Constitution. The majority agrees with the first contention, and does not directly address the second, creating a conflict with the recent decision in *Kirchmeyer v. Phillips* (2016) 245 Cal.App.4th 1394, 1404 (*Kirchmeyer*) (enforcement of the Board's subpoena of records of a psychiatrist requires a showing of a compelling state interest).

I would deny the petition, as it fails to establish a prima facie case for relief. Respondent court's enforcement order was based on substantial evidence contained in the Board's expert's declaration, pharmacy records, and "the statements attributable to the patient before the patient withdrew consent" to disclosure of his records held by Dr. Gerner. Counsel for the Board, at oral argument before this court, stated that *the Board was only seeking Dr. Gerner's records of his treatment of the patient for ADHD with prescription controlled substances*. As set forth below, the patient's records on this limited subject are not privileged, as his comprehensive disclosure of his treatment for ADHD and his conversations with Dr. Gerner waived the privilege as to that subject.

Because the psychiatric records in issue are not privileged, and the supporting evidence establishes good cause to enforce the subpoena, nothing more is required to resolve the petition. I therefore do not join in my colleagues' expansive discussion of the scope of the psychotherapist-patient privilege.

---

[5] Statutory references are to the Evidence Code, unless otherwise stated.

**Standard of Review**

"The standard of review generally applicable to review of a trial court's order involving discovery matters or other matters where the trial court has discretionary power is abuse of discretion. (See *Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1123.) An abuse of discretion is found where a court exceeds the bounds of reason in light of the circumstances under consideration. (*Loomis v. Loomis* (1960) 181 Cal.App.2d 345, 348.)" (*Medical Bd. of California v. Chiarottino* (2014) 225 Cal.App.4th 623, 628.)

An appellate "court may deny the application for an alternative writ and dismiss the petition if the petition fails to allege a prima facie case for relief or is procedurally defective. (See, e.g., *Dare v. Board of Medical Examiners* (1943) 21 Cal.2d 790, 797.)" (*Gomez v. Superior Court* (2012) 54 Cal.4th 293, 301.)

**The Psychotherapist-Patient Privilege and Waiver under Evidence Code Section 912**

"Subject to Section 912 . . . the patient . . . has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist . . . ." (§ 1014.) Section 912 provides in pertinent part as follows: "Except as otherwise provided in this section, the right of any person to claim a privilege provided by Section . . . 1014 (psychotherapist-patient privilege) . . . is waived with respect to a communication protected by the privilege if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." (§ 912, subd. (a).)

Not every disclosure of a communication between a psychotherapist and patient constitutes a waiver. "Under the terms of this section, the disclosure must reveal a 'significant part of the communication' before a waiver will occur. In *In re Lifschutz* [(1970)] 2 Cal.3d 415, 430, we made it clear that the mere disclosure of the *existence* of the psychotherapist-patient relationship does not reveal a significant part of the

7

communication and thus does not constitute a waiver." (*Roberts v. Superior Court* (1973) 9 Cal.3d 330, 340.) "There is, of course, a vast difference between the disclosure of a general description of the object of her psychotherapeutic treatment, and the disclosure of all or a part of the patient's actual communications during psychotherapy." (*Id.* at p. 340, fn. 3.) Merely admitting the existence of a psychotherapist-patient relationship does not disclose a significant part of the communication. (*In re Lifschutz*, *supra*, at p. 430.) However, the psychotherapist "cannot assert his patient's privilege if that privilege has been waived . . . ." (*Ibid.*) A patient may make "a limited waiver" of the privilege. (*Id.* at p. 435.)

**Analysis**

Respondent court's decision to enforce the investigational subpoena was not an abuse of discretion. The court based its order in part on a declaration from the Board's expert physician concluding there was good cause to believe that Dr. Gerner "allegedly prescribed excessive amounts . . . of the medication, and prescribed the drug in an irregular fashion." The court also relied on pharmacy records concerning the dosages prescribed, and "the statements attributable to the patient before the patient withdrew consent . . . ." In combination, this evidence provided ample support for the court's decision to enforce the subpoena.

My colleagues acknowledge that it "could perhaps be argued that [the patient's] statements reported by the Board's investigator could support a determination that he waived confidentiality," but conclude the patient did not make "an all-encompassing waiver of confidentiality with respect to treatment records." This position does not withstand scrutiny for two reasons.

First, not all of the patient's records are at issue. At oral argument before this court, counsel for the Board agreed the Board's interest would be satisfied by enforcement of the subpoena *limited to Dr. Gerner's prescriptions and treatment of the*

8

*patient for ADHD*, rather than requiring production of the entirety of the patient's treatment records. In other words, the Board is not seeking all of the patient's records held by Dr. Gerner. It is perplexing that the majority refuses to accept the concession by counsel for the Board limiting the scope of the investigational subpoena. In *Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 475, this division held that counsel's concessions at oral argument are binding on a client. Our Supreme Court agrees. (*Browne v. Superior Court* (1940) 16 Cal.2d 593, 599.)

Second, our Supreme Court in *In re Lifschutz, supra*, 2 Cal.3d at page 435, recognized that a patient may, through disclosure, make a limited waiver of the privilege. That is precisely what happened here, as the patient most assuredly waived the psychotherapist-patient privilege by disclosure of his communications and treatment as to issues relating to prescriptions written by Dr. Gerner for Ritalin and Concerta.

The patient described in significant detail his treatment for ADHD, both in Switzerland and with Dr. Gerner. The patient disclosed his plea to Dr. Gerner to return to his previous dosage, and Dr. Gerner's disagreement with the patient but acquiesced to the request. The patient described his success in convincing Dr. Gerner to return to the previous dosage. The patient stated that Dr. Gerner provided him with prescriptions for 150 to 200 54 milligram tablets of Concerta twice a month, while at the same time telling him it was too much medication. The patient disclosed Dr. Gerner's frustration over the patient not taking his advice regarding dosage. Dr. Gerner threatened the patient that he would be arrested at his house by the DEA. The patient disclosed how Dr. Gerner had a change in attitude once the patient withdrew an initial complaint to the Board. Finally, the patient stated his belief that Dr. Gerner changed his medications, even though the prescriptions remained the same. When he spoke to Dr. Gerner about these issues, the doctor said the patient was taking too much medication, resulting in a negative effect on his body, and Dr. Gerner insisted that his recommended doses would work effectively.

My colleagues state respondent court never found a waiver of the psychotherapist-patient privilege, but cite no authority for the proposition that an express finding was

9

required, particularly in circumstances where the privilege was so plainly waived by disclosure. But even if the court did not expressly find a waiver, we review the court's ruling, not its reasoning, and if the ruling was correct on any ground, we uphold the decision of the lower court. (*People v. Rogers* (2009) 46 Cal.4th 1136, 1162, fn. 14; *People v. Zamudio* (2008) 43 Cal.4th 327, 351, fn. 11.) The investigator's uncontradicted report establishes waiver of the privilege by disclosure as a matter of law.

The Board has a duty to investigate alleged misconduct by physicians, including the abuse of the privilege of writing prescriptions for controlled substances. The Board's power to investigate dangerous prescribing practices should not be eliminated merely because the physician is also a psychiatrist. This case may be decided on the narrow grounds set forth above. I would deny the petition and permit the subpoena to be executed with the limitations conceded by counsel for the Board.

**Additional Observations on the Majority Opinion**

While the above analysis is sufficient to explain my disagreement with the majority, and at the risk of prolonging an already lengthy dissent, it is difficult to understand the majority's assertion that its reasoning "is not inconsistent" with the recent decision in *Kirchmeyer*, *supra*, 245 Cal.App.4th 1394. The majority here holds the psychotherapist-patient privilege *cannot be penetrated under any circumstances* through an investigational subpoena. That conclusion cannot be reconciled with the holding in Justice Fybel's well-reasoned opinion in *Kirchmeyer*: "Because the psychotherapist-patient privilege is grounded in the patient's constitutional right of privacy, the Director had to show a compelling interest justifying production of the medical records sought." (*Kirchmeyer, supra,* at p. 1398.) The reasoning in the two decisions is plainly inconsistent.

I would deny the petition. The Board had a duty to investigate whether Dr. Gerner, in his capacity as a physician prescribing controlled substances, acted in

10

accordance with law.  The limited records sought by the Board pertaining to that issue were not privileged.  Dr. Gerner has not sustained his burden of demonstrating an abuse of discretion by respondent court.


KRIEGLER, J.*

---

* Associate Justice of the Court of Appeal, Second Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.